**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff CYNTHIA WOLLAM,
as Trustee of the Irrevocable Trust of Miles E.
Wollam and Mary H. Wollam, Individually,
and on Behalf of the Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA WOLLAM, as Trustee of the Irrevocable Trust of Miles E. Wollam and Mary H. Wollam, Individually, and on Behalf of the Class and Sub-Class defined below,<br><br>Plaintiff,<br><br>vs.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY, an Iowa Corporation,<br><br>Defendant. | Case No.: 4:21-cv-09134-JST<br><br>**FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT FOR:**<br><br>(1)  **DECLARATORY RELIEF OR JUDGMENT (CAL. CIV. CODE § 1060, *ET SEQ.*);**<br><br>(2)  **BREACH OF CONTRACT;**<br><br>(3)  **UNFAIR COMPETITION (CAL. BUS. AND PROF. CODE § 17200, *ET SEQ.*); AND**<br><br>**DEMAND FOR JURY TRIAL** |

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

Plaintiff CYNTHIA WOLLAM, as Trustee of the Irrevocable Trust of Miles E. Wollam and Mary H. Wollam, Individually, and on Behalf of the Class and Sub-Class, and as defined below, makes the following allegations against Defendant TRANSAMERICA LIFE INSURANCE COMPANY, an Iowa Corporation, ("Transamerica") as follows:

## I.    NATURE OF THE CASE

1.    Since January of 2013, Transamerica has wrongfully terminated thousands of life insurance policies in violation of California law. The unlawful activity continues to this day. Plaintiff and the Class of Transamerica policy owners and vested beneficiaries are victims of Transamerica's ongoing unlawful practices.

2.    Since January 1, 2013, every life insurer doing business in California, before it can lawfully lapse or terminate a life insurance policy[1] for nonpayment of premium, must strictly comply with the notice and grace period provisions found in California Insurance Code Sections 10113.71 and 10113.72 ("the Statutes"), as well as existing in California common law. There are no exceptions. The legal requirements of the Statutes are simple.

3.    First, every life insurance policy must "contain" and actually grant a 60-day grace period. This means a 60-day grace period must be actually written and contained in the terms of the contract of insurance provided to the policy owner.  During this time, premiums received must be accepted without condition and the policy owner and the insurer may not declare the policy lapsed or terminated. Should the insured die during while the policy is not effectively terminated and stays in force the insurer must pay the policy benefits.

4.    Second, the Statutes mandate that no policy may lapse or be terminated until and unless, after a payment is due and is unpaid, the insurer mails a 30-day warning notice, not only to the named policy owner, but also to any assignee, any person with interest in the policy, and to any designee selected by the policy owner to receive such notice. The notice may only be mailed after

---

[1] Unless otherwise noted, reference to "policy," "policies," or "life insurance policy" includes but is not limited to, group and individual life insurance policies as defined by Ins. Code section 10113.71(c), and a certificate issued and/or delivered in the state of California regardless of the state of issuance of the master group policy. See California Insurance Commissioner (Bulletin 87-3); *see also Gambino v. Met. Life Ins. Co.*, 2019 U.S. Dist. LEXIS 230633 (C.D. Cal. Nov. 1, 2019) and California Insurance Code sections 100 and 380(defining the term "policy" as "[t]he written instrument in which a contract of insurance is set forth, is the policy).

the initial premium is due and is unpaid. And the notice must be an accurate description of the status of the policy and must be mailed by first class mail. See Ins. Code section 332.

5.    Next, every "applicant" for individual life insurance must be notified of its right to designate an individual to receive the 30-day notices provided by the Statutes prior to the issuance and delivery of the policy.  This notice must then be provided annually to the policy owner. An "applicant" for life insurance means any form of applicant, including "applicants" for reinstatement, conversion or any modification or change in the contract.

6.    Finally, under the terms of the Statutes, no insurer may lapse or terminate a life insurance policy for nonpayment without first strictly complying with all these provisions. Failure to comply with all these notice provisions voids any attempted termination or lapse as a matter of law until and unless there has been compliance. None of these requirements are satisfied by substantial performance, nor are they excused by the conduct of the policy owner or the alleged subjective intent of the policy owner. These are clear legal mandates and, absent strict compliance with each and every provision, the insurance company must continue to treat the policy as in force and eligible for payment in the event of a death.

7.    Since January 1, 2013, Transamerica has systematically and purposely failed to provide full 60-day grace periods, proper notices of pending lapse or termination, or inform applicants and policy owners entitled to compliance with Ins. Code section 10113.72 of their right to designate a third party to receive notices of lapse. Further, in evaluating terminations arising from nonpayment of premium after January 1, 2013, Transamerica has failed to apply these rules and undertakes no evaluation of its own compliance. This specific failure to comply is universal and implicates policies issued before and after the date of the Statutes' enactment (January 1, 2013).

8.    Transamerica has also intentionally concealed from its policy owners and beneficiaries, and other persons and entities with interests in its life insurance products, the existence of these mandatory rules and procedures and the rights they guarantee--rights that Transamerica would rather its customers and claimants not know about. This concealment,

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

scheme, and plan by Transamerica is intentional, as is Transamerica's complete disregard for the statutory mandates of California.

9.    Moreover, since January 1, 2013, Transamerica has become aware of its failures and has failed to take the appropriate corrective action. Instead, Transamerica appears to have doubled down and made the decision to ignore the law, ignore court rulings, and deal with the occasional complaint without regard to its obligation to apply these rules properly and completely to all of its varied life insurance products sold in this state.

10.    Transamerica's continued disregard for the law is widespread. Indeed, thousands of policy owners have lost and continue to lose the benefit, value, and security of their life insurance; have been and continue to be forced into unnecessary reinstatements; and in many instances have lost all reasonable access to any insurance at all. Ultimately, Defendant has robbed thousands of its beneficiaries of policy benefits, inappropriately obtained unearned premiums and thousands of insureds of the ability to have life insurance protection.

11.    The injury to Transamerica's customers and vested beneficiaries continues today, with policy owners currently paying unnecessary or inflated premiums or unknowingly suffering from improper, forced "reinstatements" which diminish the value of the policies. And Transamerica has told numerous policy owners that they have no insurance, although their policies, unbeknownst to the policy owners, are still in force. All share the same harm and injury-- an unlawfully terminated or repudiated policy. Today these people, their heirs, beneficiaries and others with interest likely believe that the defaulted party to these policies is the policy owner, when, in fact, the only party in default and the only party which disavowed and repudiated the policy was Transamerica. Beneficiaries who do make benefit claims are having these claims denied on the false assertion that the policy was terminated when, in fact, benefits are owed. And most actual vested beneficiaries do not even know that they have rights under a policy illegally terminated, which still requires payment of the benefits.

12.    The mandates of California law and the California Insurance Code were established to protect all Californians and others, primarily seniors and the ill, and apply regardless of the date

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

of the policy's issuance. *McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213.[2]   And to accomplish this goal, the legislative by clear and concise language applied the mandates to every type of "nonpayment of premium" regardless of cause or purpose.

13.    Transamerica's conduct and failure to comply with the Statutes was intended to take advantage of the people for whose benefit the Statutes were passed as well as ignore the regulatory purpose behind the Statutes mandating strict compliance.  Transamerica intentionally increased the likelihood of forfeitures, which allowed Transamerica to gain financially at the expense of its customers.

14.    Plaintiff is a victim of Transamerica's past and continual failures to appreciate the importance and mandates of the Statutes and to disclose those mandates to its policy owners. Sometime between 2018 and 2021, Transamerica wrongfully terminated Plaintiff's policy without providing all of the Statutes' protections. As of the date of Plaintiff's father's death, the policy was in fact in full force and effect.   After Plaintiff's father passed, Plaintiff sought payment of the policy benefits and now through this action seeks payment of the benefits.  Defendant has asserted, both prior to suit and after suit, that the only basis for denial of Plaintiffs claim is that the subject policy was not in force on the date of the insured's death.

15.    In sum, Plaintiff suffered the common single harm suffered by all of the class members – the wrongful and continued repudiation of their valuable life insurance policies. Plaintiff's experience is not unique and is one suffered by the Class as a whole.

16.    Plaintiff brings this action to recover for the injuries and damages and/or for the Court to fashion appropriate remedies necessary and resulting from these violations, not only to her benefit in her capacity as Trustee of the beneficiary Trust, but also on behalf of the numerous California policy owners and vested beneficiaries who have also been denied and continue to be

---

[2] Additional supporting federal appellate and district court decisions have just been issued in this regard. Recently, the Ninth Circuit upheld a decision by the district court concluding that failure to strictly comply with the provisions of Insurance Code Sections 10113.71 and 10113.72 means that the policies could not legally terminate and that, therefore, if a death of an insured occurs, policy benefits are owed without any additional or special showings needed by the Plaintiff. *Thomas v. State Farm Life Ins. Co.,* No. 20-55231, 2021 U.S. App. LEXIS 30035 (9th Cir. Oct. 6, 2021). Also, Judge Ghee previously held the same, and rendered a class action judgment in favor of a class of insureds.  *Bentley v. United of Omaha Life Ins. Co.,* No. 2:15-cv-07870-DMG (AJWx), 2018 U.S. Dist. LEXIS 117107 (C.D. Cal. May 1, 2018).

denied the benefits of California law.  Plaintiff also requests injunctive relief intended to ensure Transamerica's future compliance with these important consumer safeguards and to prevent the ongoing violation of these important Statutes.

## II. **PARTIES**

17.     Plaintiff CYNTHIA WOLLAM, as Trustee of the Irrevocable Trust of Miles E. Wollam and Mary H. Wollam, Individually, and on Behalf of the Class, is an individual and the daughter of the insured, Miles E. Wollam. Plaintiff is and has been a resident and citizen of Marin County, California, at all times relevant, and is a Trustee of the Trust. The Trust is also the express beneficiary of the policy. Plaintiff pursues these claims and causes of action individually, as trustee, on her own behalf as the policy owner, and as beneficiary of the subject policy.

18.     Miles E. Wollam is Plaintiff's father. He was and has been a California resident at all relevant times. Miles E. Wollam is the named "Insured" under the terms of the policy. Miles E. Wollam passed away on April 10, 2021.   Defendant has possession of Mr. Wollam's death certificate.

19.     Defendant Transamerica is an Iowa corporation engaged in the sale and administration of life insurance throughout the United States and other territories. Transamerica is licensed to conduct business and does business throughout California. Transamerica is a licensed/chartered life insurance carrier in California and is subject to regulation by California authorities.   Transamerica's license/charter and authority to transact the business of life insurance in the state applies to all forms of life insurance referenced herein.  Such licenses and charters approved by the State of California are mandated regarding any form of business transaction within the State including the transaction of insurance in which policies may have originally issued in whole or in part outside the State of California. As to every act undertaken by Defendants in this action, such conduct is subject to regulation by the State of California.

20.     laintiff is informed and believes, and on that basis alleges, that now and at all times relevant, each Defendant was and is the agent, employee, employer, servant, representative, partner and/or co-venturer of each of the other Defendants, and was acting and is acting within the scope of such authority and relationship and with the knowledge, approval, consent, and

ratification of the other Defendants, as applicable, in each of the transactions, events, or other matters herein described.

### III. JURISDICTION

21.    This is a civil matter of which the Courts of California had original jurisdiction. This action arose in the state of California and exclusively involves application of laws of the state of California, as well as life insurance policies issued or delivered in California.

22.    Plaintiff is informed and believes that the controversy at issue solely involves a dispute confined to the state of California, its laws, and the ultimate jurisdiction of the courts of California.

23.    Plaintiff is informed and believes that all injuries and damages arose primarily in the state of California and all related conduct of the Defendants occurred solely within the state of California.

24.    Defendant is authorized to conduct business in this state and has intentionally availed itself of the laws and markets within this state and does substantial business in this state. The business and activities, which are the subject of this litigation, are being conducted throughout the state in each and every county on a uniform and consistent basis. Plaintiff is informed and believes that Transamerica itself treats all policy owners, beneficiaries, agents, producers or others living or located in California as being regulated and governed by the same uniform statewide policies and procedures. Transamerica's business within this state is substantial and consists of the marketing, sale, delivery, maintenance, and administration of thousands of life insurance policies, representing billions of dollars in benefits, as well as the maintenance of dozens of sales and agent offices.

25.    Transamerica advertises throughout California, including throughout this county, and conducts significant sales and related business activities in California and in this county, in general, as well as specifically regarding the marketing, sale, and administration of life insurance policies.

26.    Plaintiff is informed and believes that Transamerica, consistent with industry standards for insurance companies doing business in numerous jurisdictions, utilizes the addresses

of policy owners as a determining factor of what law to apply to the administration of the policy. As such, Transamerica treats policy owners residing in California as requiring application of California law and Transamerica, furthermore, acknowledges its capacity to be sued in California counties in which it is involved in business. Transamerica has developed and continues to develop and apply not only marketing strategies, but administration strategies, specifically, in relation to actual or potential policy owners residing in California. Transamerica's wrongful conduct has occurred in this county and throughout the state of California.  Since 2013, the wrongful conduct alleged throughout this Complaint has occurred within California.

27.    Transamerica has removed this matter to the jurisdiction of this Court on grounds of diversity as well as the Class Action Fairness Act.  Plaintiff does not admit or deny that this Court has full jurisdiction and contends to the extent that this Court determines that jurisdiction for some or all of Plaintiff's claims lie outside this Court's jurisdiction, jurisdiction remains in the State Court.

### IV.  THE ENACTMENT AND APPLICABILITY OF INSURANCE CODE SECTIONS 10113.71 AND 10113.72

28.    In 2012, after extensive and open hearings and public consideration, including with Transamerica all other major insurance companies doing business in California, the California Legislature enacted Insurance Code Sections 10113.71 and 10113.72 (the "Statutes"), which instituted procedural requirements for the termination and lapse of life insurance policies. The Statutes were written to avoid unintended forfeiture of life insurance policies primarily being suffered by the elderly and the ill. The Legislature found there was a significant problem in California with the elderly abruptly losing insurance because they happened to miss a premium payment, despite having faithfully and timely paid for many years.  Consistent with that intent, the Statutes were also designed to apply to all forms of life insurance forfeitures involving any type of "nonpayment of premium" regardless of the intent or purpose of the policyowner.

/ / /

/ / /

/ / /

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

29.     Section 10113.71 reads as follows:

### § 10113.71 Grace Period; Notice of pending lapse and termination of policy; Mailing requirement

(a)   Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

(b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class United States mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

Next, Section 10113.72 states:

### § 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number     of     at     least     one     person,     in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c)   No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

## V.  TRANSAMERICA'S VIOLATIONS OF LAW

30.     In 2012, Defendant was made fully aware of the drafting and enactment of these provisions. And through its own lobbying groups and regulatory advisors, Defendant understood how and in what fashion the Statutes would apply. Prior to enactment, Defendant made no attempt to object to the enactment of the Statutes.

31.     Despite early knowledge of the Statutes and their mandates, since January 1, 2013, Defendant has failed to fully comply with the Statutes in a variety of different ways.  Transamerica has treated policies differently based on their date of issuance and the type of policy, the purported intent of the policy owner for the nonpayment of premium, and other improper bases and excuses for noncompliance.

32.     Specifically, Transamerica has not strictly complied with the Statutes regarding individual policies issued or delivered in the state of California prior to January 1, 2013. Specifically, Transamerica's violations and failures to comply with the Statutes has included:

a)      Failing to provide full 60-day grace periods contained in the policy by either not actually attaching or making the grace period a physical part of the policy, improperly advising policy owners and/or claimants of the wrong grace period, not accepting premiums without conditions during the grace period or prior to an effective termination, or inaccurately declaring a policy terminated prior to the expiration of the grace period, which amounts to a repudiation of the policy; and/or

b)      Failing to mail compliant accurate and timely 30-day pending lapse notices to the policy owner and/or designee either by inaccurately describing the actual grace period, by failing to mail to those recipients the notices required by law and/or by providing insufficient time periods as required by law; and/or

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

c)   Failing to provide annual notifications to policy owners, entitled to such notices, of their rights to designate; and/or

d)   Failing to apply the mandates of the Statutes as an absolute condition for termination of any policy for nonpayment of premium and instead excusing noncompliance based on the inaccurate perceived fault of the policy owner, asserting nonexistent and contrived conditions to payment of benefits or other irrelevant grounds or justification; and

e)   By treating policy owners directly and indirectly as if they are in default for payment of premiums, when in fact, in every instance, Transamerica first violated the terms of the policy and/or Statutes prior to any actual default by any policy owner; and/or

f)   By attempting to impose new conditions on terminated policies including the demand for repayment of unearned premiums, as well as ignoring the consequences of noncompliance with the Statutes; and

g)   By other acts by which the mandates of the Statutes are not being strictly complied with.

33.   Finally, Plaintiff is informed and believes that Transamerica has failed to institute appropriate training and education of its sales and underwriting staff, as well as its claims personnel and others whose knowledge of these rules is essential for Transamerica's operation. Plaintiff is informed and believes that additional violations of the Statutes have also occurred, which will be disclosed during this litigation.

## VI.  PLAINTIFF'S POLICY, LAPSE, TERMINATION, AND DENIAL OF REINSTATEMENT

34.   Plaintiff's experience with Transamerica is representative of Transamerica's ongoing course of misconduct and noncompliance.

35.   In September of 1985, Miles E. Wollam purchased a life insurance policy in California from Transamerica, Policy No. 9209226, insuring his life in the amount of $50,000. **Exhibit "A."** At the time of issuance, the policy owner was Mr. Wollam; the primary beneficiary

was Mary Helen Wollam, Mr. Wollam's wife. Subsequently, both the policy owner and the beneficiary were changed to the Wollam Family Irrevocable Trust dated December 14, 1994. Plaintiff Cynthia Wollam is a named trustee for the trust and was the primary point of contact with Transamerica.

36.    The policy was initially issued and then delivered in California in 1985.  The policy had a planned annualized premium of $1,500, and contains a provision stating that, if on any monthly deduction date, the cash value of the policy was insufficient to pay the required premium, "[Transamerica] will notify you that a premium sufficient to keep this policy in force must be received within 31 days from the date of the notice or this policy will lapse."  **Exhibit "A."** No other grace period is specified.

37.    For many years, the required premiums were paid from the cash value of the policy. Ms. Wollam, as trustee, received annual statements every year and various other communications. Ms. Wollam never affirmatively cancelled the policy, and Plaintiff alleges that Transamerica did not comply with the mandates of the Statutes, including never endorsing or formally changing the grace period to 60 days, not mailing a compliant pending lapse notice nor sending a proper notice of a right to designate.

38.    In April of 2021, Mr. Wollam passed away. Following his death, Plaintiff contacted Defendant to start the process of making a formal claim for benefits. On this telephone call, Ms. Wollam was informed that the policy had lapsed for nonpayment of premium some time prior to Mr. Wollam's death and that, therefore, no claim could be made. At this time, Defendant knew that prior to termination, Defendant did not mail a 30-day notice, as required by the Statutes, did not provide a right to designate a third party to receive notices, nor had it provided the grace period notice, as required by the Statutes or the policy contract. Also at this time, Transamerica knew that the Statutes applied to the Plaintiff's policy and knew that numerous State and Federal Court's had concluded that the Statutes applied regardless of the date of issuance.  Transamerica consciously and intentionally chose not to advise Plaintiff of these facts.

39.    As of the date of Mr. Wollam's death, Transamerica had violated every single provision of the Statutes. Initially, prior to discovery and investigation, it appears Transamerica

violated at the least Ins. Code Section 10113.72(b), by not annually notifying her of a right to designate. Transamerica terminated the policy without compliance with the provisions of Ins. Code Section 10113.71(a), which mandated a 60-day grace period. Transamerica also failed to provide proper notices, as required by Ins. Code Sections 10113.71(b)(1) and (3). No notice was sent to the policy owner and no notice was sent to any designee. Transamerica then violated the Statutes when claiming that the policy had terminated, when, in fact, per The Statutes, no legal termination had occurred. And at the time when Transamerica refused to accept the Plaintiff's claim, Transamerica knew all of these facts.

40.    All these violations occurred prior to the Trust being in default or even reaching the end of the statutory and contractual grace period. The Trust had done nothing contrary to the terms of the policy, but was being dealt with as the party in default arising from the alleged nonpayment of premium.

41.    Plaintiff is further informed and believes that, irrespective of the application of The Statutes, Transamerica systematically failed to comply with the express terms of the policy, which promised a default notice prior to terminating the policy at the end of the grace period.

42.    Each of Defendant's violations was a material violation of law and a material breach and repudiation of the policy, thereby excusing any further performance by Ms. Wollam or the Trust of tendering premiums to maintain the policy in force or imposing any requirements or conditions. Transamerica was in contractual breach and remained in breach of the policy at all times from at least January 1, 2013, until the date of the filing of this action. As a result of each and every violation, there was harm and injury to Ms. Wollam.

## VII.  CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action on behalf of all members of the proposed Class and Sub-Class, as follows:

44.    **The Class:**

> All owners, or beneficiaries upon a death of the insured, of Defendant's life insurance policies that were renewed, issued, or delivered in California, and in force on or after January 1, 2013, and which underwent or will undergo lapse or termination for the nonpayment of premium

1    without Defendant first providing all of the notices, grace periods, and
2    offers of designation required by Insurance Code Sections 10113.71 and
     10113.72.

3    45.    Plaintiff also brings this action on behalf of the following sub-class or alternative
4    class of beneficiaries of in-force policies where there has been a death of one or more insureds
5    and, therefore, policy benefits are owed:

6    **Benefits Sub-Class:**

7    All beneficiaries who made a claim or would have been eligible to make a
8    claim, for the payment of benefits on Defendant's life insurance policies
     renewed, issued, or delivered in California that lapsed or were terminated
9    for nonpayment of premium after January 1, 2013 without Defendant first
     providing all of the notices, grace periods, and offers of designation
10   required by Insurance Code Sections 10113.71 and 10113.72.

11   46.    Plaintiff is a member of the Class and Benefits Sub-Class.

12   47.    ***Numerosity.***  The members of the Class and Sub-Class are so numerous that their
13   individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges,
14   that the proposed Classes contain hundreds and perhaps thousands of members. The precise
15   number of members is unknown to Plaintiff. The true number of members is known or
16   ascertainable by the Defendant, as are their identities. Thus, members may be notified of the
17   pendency of this action by first class mail, electronic mail, and/or by published notice.

18   48.    ***Existence and Predominance of Common Questions and Answers of Law and***
19   ***Fact***. There is a well-defined community of interest in the questions and answers of law and fact
20   involved affecting all class members. The common questions and answers of law and fact
21   predominate over questions and answers affecting only individual members, including, but not
22   limited to, the following:

23   a)    Has Defendant violated The Statutes;
24   b)    Is Defendant continuing to refuse to provide the protections afforded by The
25        Statutes;
26   c)    Whether class policies have been ineffectively lapsed or terminated;
27   d)    Whether class policies must be treated as in-force despite one or more missed
28        premium payments;

e)      Should Defendant be required to make payments to beneficiaries of class policies where the insured has died and the policy was lapsed or terminated in violation of The Statutes;

f)      Should policy owners, where the insured remains alive, be entitled to revive the policy without payment of unearned premium during the period of Defendant's improper termination of the policy.

49.     ***Typicality.***  Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class because Plaintiff and each member were victims of the same statutory violations. Further, Plaintiff's claims are typical of the claims of her fellow members, which all arise from the same operative facts involving Defendant's unlawful violations of Sections 10113.71 and/or 10113.72.

50.     ***Adequacy of Representation.***  Plaintiff will fairly and adequately protect the interests of the Class and Sub-Class. Plaintiff has retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair insurance business practices, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no interest adverse or antagonistic to that of the Class or Sub-Class.

51.     ***Superiority***.  A class action is a superior method for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual members are relatively small compared to the burden and expense that would be expended by individual litigation of their claims against Defendant. It would thus be virtually impossible for members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. The class action device provides the benefit of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management

difficulties under the circumstances. Moreover, many members remain unaware of their rights and, without this class treatment, would remain unaware of their rights and benefits.

52.     In the alternative, the Class and Sub-Class may also be certified because:

a)     The prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudication with respect to individual members that would establish incompatible standards of conduct for Defendant;

b)     The prosecution of separate actions by individual members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and/or

c)     Defendant has acted or refused to act on grounds generally applicable to the Class and Sub-Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members as a whole.

53.     Unless the Class and Sub-Class are certified, Defendant will retain monies received because of its conduct taken against the members and Plaintiff. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and members will continue to be harmed.

54.     Plaintiff knows of no difficulty likely to be encountered in the management of this litigation that would preclude its maintenance as a class action.  Because the action is brought as a class action, the Court need only apply a single set of California laws as they relate to Defendant's violation of Sections 10113.71 and 10113.72.

55.     Plaintiff has incurred, and will incur, expenses for attorney's fees and costs in bringing this action. These attorney's fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the Class and Sub-Class.

/ / /

/ / /

/ / /

/ / /

## VIII.   FIRST CAUSE OF ACTION

### FOR DECLARATORY JUDGMENT OR RELIEF
### (CAL CIV. CODE § 1060, *ET SEQ.*)

**(By Plaintiff, Individually, and on Behalf of the Class and Benefits Sub-Class)**

56.    Plaintiff incorporates by reference each and every allegation contained above.

57.    Plaintiff, in her individual capacity, as well as in her representative capacity, brings this action individually and on behalf of all members of the Class and Sub-Class.

58.    Under California law, "[a]ny person interested under a written instrument…or under a contract, or who desires a declaration of his or her rights or duties with respect to another…may, in cases of an actual controversy relating to the legal rights and duties of the respective parties," maintain a complaint or cross-complaint "for a declaration of his or her rights and duties." Furthermore, he or she "may ask for a declaration of rights or duties, either alone, or with other relief, and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time." Cal. Civ. Code § 1060.

### A.    Basis for Relief

59.    On January 1, 2013, the California Insurance Code was amended by Sections 10113.71 and 10113.72. The provisions of these Statutes were immediately and thereafter read into all in-force policies, regardless of the date of issuance. The provisions were further intended to require compliance by all life insurance policies- including but not limited to both group and individual- that came within the jurisdiction of California, including, but not limited to, policies that renewed or somehow continued in force on or after January 1, 2013.

60.    These Statutes and amendments to the California Insurance Code were intended to and do regulate the lapse and termination procedures arising from nonpayment of premiums which may occur from the date of enactment and thereafter.

61.    The amendments were not intended to relieve or waive a policy owner's continuing obligation to pay premiums but operated to keep the policy in force until the policy was properly lapsed or terminated consistent with the statutory provisions which were incorporated into the terms of the policy by law. Each of these statutory requirements was intended to stand alone.

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

62. Forfeiture provisions for nonpayment of premium for life insurance policies are strictly construed against lapse or termination and California law disfavors forfeiture of insurance. Forfeitures "are often the means of great oppression and injustice" and "the courts should be liberal in construing the transaction in favor of avoiding a forfeiture." *Ins. Co. v. Norton*, 96 U.S. 234, 242 (1978). "Forfeiture of a policy will be avoided on any reasonable showing." *Klotz v. Old Line Life Ins. Co. of Amer.*, 955 F.Supp. 1183, 1188 (N.D. Cal. 1996).

**B.    There is an Actual Controversy Requiring a Declaration of Rights and Duties**

63. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties under the California Insurance Code and the policy, as follows:

a)    Plaintiff contends that The Statutes apply to the subject policy, as well as to *all* of Defendant's individual and group life insurance policies issued or delivered in California and in force at any time as of or after January 1, 2013. Defendant contends that The Statutes do not apply to all such policies, including policies issued or delivered prior to January 1, 2013.

b)    Plaintiff further contends that The Statutes apply to any policies that were renewed in California on or after January 1, 2013, regardless of their original state of issuance or delivery. Defendant contends that the renewal doctrine does not apply to any such policies and that The Statutes do not apply to many categories of their policies, including any policies in existence before January 1, 2013, such as Plaintiff's policy, or any group policies issued and delivered at any time to a group policy owner outside of California even where the certificate of insurance was issued or delivered to a certificate owner in California.

c)    Plaintiff also contends the Defendant was and is required to strictly comply with The Statutes before it could (can) lapse or terminate life insurance policies after January 1st, 2013. Defendant contends that it could and can *substantially* comply and still be allowed to effectively lapse or terminate policies after January 1st, 2013.

///

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

d)  Plaintiff also contends that all of Defendant's lapses or terminations of policies for nonpayment of premium after January 1, 2013 were illegal and ineffective. Defendant contends that its lapses or terminations after January 1, 2013 were wholly legal and appropriate.

e)  Plaintiff also contends that Defendant must treat all policies lapsed or terminated after January 1st, 2013 without first strictly complying with The Statutes as in-force and eligible for payment of benefits without further proof or showings by the owners or beneficiaries.  Defendant, on the other hand, maintains that policy owners and vested beneficiaries must demonstrate some special connection between the violation and noncompliance with the Statutes' and the nonpayment of premium which is not mentioned in The Statutes.  Defendant further contends that in some fashion, Defendant is excused from compliance and/or may treat a policy as effectively terminated based on alleged Plaintiff's negligence and misfeasance. Plaintiff disputes the contentions of Defendant that compliance can be excused or a termination consummated due to any purported special causal determinations or intent.

f)  Plaintiff also contends that, per Section 10113.71, all of Defendant's policies in force on or after January 1, 2013 must contain an express 60-day (or more) grace period, including by way of issuing amended policies or written endorsements as necessary.  Defendant contends, on the other hand, that regardless of what its policies actually say or contain, Defendant has met all of its obligations in this regard by maintaining an internal – even if secret – policy to provide owners with 60+ day grace periods *in practice*.

g)  Plaintiff also contends that   where no death of the named insured has occurred, Defendant is not entitled to premium payments for periods of time where Defendant has declared a policy terminated in violation of Sections 10113.71 and/or 10113.72.  Defendant contends, on the other hand, that if it is forced to revive policies due to its failure to comply with The Statutes, then it is entitled to

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

1    collect unpaid premiums during all times it had considered the policy terminated.

2    h)   Plaintiff also contends that, as to the Benefits Sub-Class only, Defendant owes all

3    sub-class members, including Plaintiff, the face amounts of their policy benefits,

4    plus interest, without any further showing by any members.  Defendant contends

5    that it owes no such benefits or amounts.

6    64.   Plaintiff desires a judicial determination of rights and duties, and a declaration or

7    judgment in her favor on all of the points of contention mentioned in the preceding paragraph.

8    65.   A judicial declaration would advise owners and beneficiaries, like Plaintiff, of their

9    rights and would advise Defendant of its duties to Plaintiff and to Class and Sub-Class members

10   concerning their rights. A judicial declaration is also necessary to determine the validity of any

11   unnecessary reinstatements obtained, to determine whether policies were legally in force at the

12   times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied

13   payment of benefits under their policies.

## IX.  SECOND CAUSE OF ACTION

### FOR DECLARATORY JUDGMENT OR RELIEF
### (FEDERAL DECLARATORY JUDGMENT ACT – 28 U.S.C. §§ 2201, *ET SEQ.*)

### (By Plaintiff, individually and on Behalf of the Class and Benefits Sub-Class)

18   66.   Plaintiff incorporates by reference each and every allegation contained above.

19   67.   Under federal law, "[i]n a case of actual controversy within its jurisdiction, … any

20   court of the United States … may declare the rights and other legal relations of any interested party

21   seeking such declaration, whether or not further relief is or could be sought. Any such declaration

22   shall have the force and effect of a final judgment and shall be reviewable as such."  (28 U.S.C.

23   2201; Fed. Rule Civ. Proc., Rule 57).

24   68.   An actual controversy has arisen and now exists between Plaintiff and Defendant

25   concerning their respective rights and duties under the California Insurance Code and the policy, as

26   follows:

27   / / /

28   / / /

a)   Plaintiff contends that The Statutes apply to the subject policy, as well as to *all* of Defendant's individual and group life insurance policies issued or delivered in California and in force at any time as of or after January 1, 2013.  Defendant contends that The Statutes do not apply to all such policies, including policies issued or delivered prior to January 1, 2013.

b)   Plaintiff further contends that The Statutes apply to any policies that were renewed in California on or after January 1, 2013, regardless of their original state of issuance or delivery. Defendant contends that the renewal doctrine does not apply to any such policies and that The Statutes do not apply to many categories of their policies, including any policies in existence before January 1, 2013, such as Plaintiff's policy, or any group policies issued and delivered at any time to a group policy owner outside of California even where the certificate of insurance was issued or delivered to a certificate owner in California.

c)   Plaintiff also contends the Defendant was and is required to strictly comply with The Statutes before it could (can) lapse or terminate life insurance policies after January 1st, 2013.  Defendant contends that it could and can *substantially* comply and still be allowed to effectively lapse or terminate policies after January 1st, 2013.

d)   Plaintiff also contends that all of Defendant's lapses or terminations of policies for nonpayment of premium after January 1, 2013 were illegal and ineffective. Defendant contends that its lapses or terminations after January 1, 2013 were wholly legal and appropriate.

e)   Plaintiff also contends that Defendant must treat all policies lapsed or terminated after January 1st, 2013 without first strictly complying with The Statutes as in-force and eligible for payment of benefits without further proof or showings by the owners or beneficiaries.  Defendant, on the other hand, maintains that policy owners and vested beneficiaries must demonstrate some special connection between the violation and noncompliance with the Statutes' and the nonpayment of premium which is not mentioned in The Statutes.  Defendant further contends that in some

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

fashion, Defendant is excused from compliance and or may treat a policy as effectively terminated based on alleged Plaintiff's negligence and misfeasance. Plaintiff disputes the contentions of Defendant that compliance can be excused or a termination consummated due to any purported special causal determinations or intent.

f)    Plaintiff also contends that, per Section 10113.71, all of Defendant's policies in force on or after January 1, 2013 must contain an express 60-day (or more) grace period, including by way of issuing amended policies or written endorsements as necessary.  Defendant contends, on the other hand, that regardless of what its policies actually say or contain, Defendant has met all of its obligations in this regard by maintaining an internal – even if secret – policy to provide owners with 60+ day grace periods *in practice*.

g)    Plaintiff also contends that   where no death of the named insured has occurred, Defendant is not entitled to premium payments for periods of time where Defendant has declared a policy terminated in violation of Sections 10113.71 and/or 10113.72. Defendant contends, on the other hand, that if it is forced to revive policies due to its failure to comply with The Statutes, then it is entitled to collect unpaid premiums during all times it had considered the policy terminated.

h)    Plaintiff also contends that, as to the Benefits Sub-Class only, Defendant owes all sub-class members, including Plaintiff, the face amounts of their policy benefits, plus interest, without any further showing by any members.  Defendant contends that it owes no such benefits or amounts.

69.    Plaintiff desires a judicial determination of rights and duties, and a declaration or judgment in her favor on all of the points of contention mentioned in the preceding paragraph.

70.    A judicial declaration would advise owners and beneficiaries, like Plaintiff, of their rights and would advise Defendant of its duties to Plaintiff and to Class and Sub-Class members concerning their rights. A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained, to determine whether policies were legally in force at the

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies.

### X.    THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

**(By Plaintiff, Individually and on Behalf of the Class and Benefits Sub-Class)**

71.    Plaintiff incorporates by reference each and every allegation contained above.

72.    Defendant breached and continues to breach the express terms of its life insurance policies, including Plaintiff's policy, as well as the statutory mandates regarding such policies, by, amongst other things:

a)    Failing to treat class and sub-class policies as in force as The Statutes require;

b)    Failing to include in such policies and/or failing to provide a physical endorsement and/or amendment effectuating a 60-day grace period for purposes of payment of premiums and lapse and termination of coverage for nonpayment of premium;

c)    Lapsing and/or terminating policies before expiration of the 60-day grace period;

d)    Failing to include in such policies and failing to provide accurate 30-day written notice of pending lapse or termination;

e)    Failing, where applicable, to provide proper notice to policy owners on an annual basis of the policy owners' right to designate individuals to receive notices of pending lapse or termination;

f)    Lapsing or terminating policies without strictly complying with the terms of the policies;

g)    Refusing to pay benefits to beneficiaries, despite knowledge and information that Defendant had not strictly complied with the terms of the policies;

h)    Improperly requiring reinstatement of policies that had not lapsed or terminated and which were not required or were not subject to reinstatement;

i)    By failing to pay benefits or claims; and

j)    By failing to provide the notices required by the policy; and

73.    All the aforementioned conduct, individually and collectively, constitutes material

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

1    unexcused breaches of the policy, as well as express material repudiations of the contract.

2        74.    Plaintiff has complied with all her obligations under her policy except for any

3    obligations that have been excused or waived by Defendant's conduct or that Defendant is

4    estopped from enforcing.

5        75.    Defendant's conduct legally and proximately caused Plaintiff and all members of

6    the class and sub-class significant injury.

7        76.    As to all class members, Defendant's conduct has legally and proximately caused

8    them to lose valuable coverage.

9        77.    As to the Benefits Sub-Class, Defendant's conduct has also legally and proximately

10   caused them to lose their policy benefit amounts, which are due and owing.

11       78.    As a legal and proximate result of the conduct described herein, the Class and

12   Benefits Sub-Class have suffered direct and foreseeable economic damages, including loss of

13   policy benefits and/or the value of the policy and allowed interest under the terms of the policies

14   and the law, in a nature and amount to be proven at the time of trial.

15               **XI.    FOURTH CAUSE OF ACTION**

16       **UNFAIR COMPETITION (CAL. BUS. AND PROF. CODE § 17200, *ET SEQ.*)**

17        **(By Plaintiff, Individually, and on Behalf of the Class and Benefits Sub-Class)**

18       79.    Plaintiff incorporates by reference each and every allegation contained above.

19       80.    California Business and Professions Code Sections 17200, *et seq*., (the "UCL")

20   prohibit any unlawful, unfair, deceptive, or fraudulent business practice.

21       81.    Defendant committed "unlawful" acts under the UCL by violating and continuing to

22   violate Sections 10113.71 and 10113.72 as described above and including by prematurely

23   terminating insurance coverage or repudiating insurance coverage that The Statutes guarantee are

24   to be considered in-force and eligible for benefits payments.

25       82.    Transamerica's illegal practices also included and continue to include Defendant's

26   ongoing concealment of the rights afforded to policy owners under Sections 10113.71 and

27   10113.72. Defendant continues to conceal and mislead the policy owners and beneficiaries of the

28   existence of a right to a 30-day lapse notice, a right to a 60-day grace period, a right to an annual

1  designation, as well as the provisions of these Statutes that mandate strict compliance before any

2  effective lapse or termination occurs.

3        83.    Moreover, Transamerica has committed deceptive acts under the UCL by

4  affirmatively and erroneously telling Class members, like Plaintiff, that their policies had grace

5  periods of less than 60 days and/or that their policies lapsed or terminated. The truth is that the

6  policies had grace periods of at least 60 days and the policies had *not* actually lapsed or terminated.

7        84.    The unlawful and unfair business practices described above have proximately

8  caused harm and injuries to Plaintiff, the Class, the Benefits Sub-Class, and to the general public in

9  the form of lost money, property, or benefits. The money lost by all Class members includes the

10 loss of valuable insurance protection and insurance premiums Defendant did not earn and

11 wrongfully collected.

12       85.    The Benefits Sub-Class lost the same things and lost the policy benefits belonging

13 to them which Defendant continues, to this day, to wrongfully withhold.

14       86.    Pursuant to California's UCL, Plaintiff, the general public, and the members of the

15 Class are entitled to restitution of the money or property acquired by Defendant by means of such

16 business practices, in amounts yet unknown, but to be ascertained at trial. Examples of this lost

17 money acquired illegally by Defendant include unrefunded premiums, withheld benefits, and

18 diminution of value of policies.

19       87.    Defendant continues to this day to ignore or otherwise violate the Statutes and

20 continues to ignore or repudiate otherwise valid and in-force life insurance policies that should be

21 in effect today. Defendant continues to rob beneficiaries and owners, like Ms. Wollam, of their

22 lawfully owned policies and continues to withhold their benefits. As such, and pursuant to

23 California's UCL, Plaintiff and the members of the Class and the general public are also entitled to

24 injunctive relief, including a mandatory injunction requiring Defendant to comply with The

25 Statutes and to pay policy benefits that are owed now or will become owed in the future, as well as

26 public injunctive relief, against Defendant's ongoing business practices.

27       88.    If Defendant is not enjoined from engaging in the unlawful business practices

28 described above, Plaintiff, the Class, and the general public will be irreparably injured.

89.    Plaintiff, the general public, and the members of the Class have no plain, speedy, and adequate remedy at law.

90.    Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.

91.    Private enforcement of these rights is necessary, as no public agency has pursued enforcement and the interests Plaintiff seeks to protect are for the benefit of the general public. Plaintiff is therefore entitled to an award of attorneys' fees and costs of suit pursuant to, among others, California's UCL, the Common Fund Doctrine, the Public Benefit Doctrine, and California Code of Civil Procedure Section 1021.5.

## XII.    PRAYER FOR RELIEF

Plaintiff CYNTHIA WOLLAM, as Trustee of the Irrevocable Trust of Miles E. Wollam and Mary H. Wollam, Individually, and on Behalf of the Class, prays for relief against Defendant as follows:

1.    For certification of this action as a class action;

2.    A declaration of Plaintiff's and the Class' and Sub-Class' rights pursuant to the insurance policies issued by Defendant and a declaration that Defendant has violated the Statutes;

3.    For an injunction to issue against Defendant, stopping and remedying the ongoing violation of the Statutes, including mandatory injunctive relief, and public injunctive relief;

4.    For economic damages according to proof where available;

5.    For restitution where available;

6.    For interest where available;

7.    For attorney's fees and all litigation costs and expenses where available; and

/ / /

/ / /

/ / /

/ / /

1    8.    For such other and further relief as this Court deems just and proper.

2  Respectfully submitted:

   DATED:  January 18, 2022                         **NICHOLAS & TOMASEVIC, LLP**
3

4                                      By:    */s/ Alex Tomasevic*
                                              Craig M. Nicholas (SBN 178444)
5                                             Alex Tomasevic (SBN 245598)
                                              225 Broadway, 19th Floor
6                                             San Diego, California 92101
                                              Tel: (619) 325-0492
7                                             Fax: (619) 325-0496
                                              Email: cnicholas@nicholaslaw.org
8                                             Email: atomasevic@nicholaslaw.org

9                                             **WINTERS & ASSOCIATES**
                                              Jack B. Winters, Jr. (SBN 82998)
10                                            Georg M. Capielo (SBN 245491)
                                              Sarah Ball (SBN 292337)
11                                            8489 La Mesa Boulevard
                                              La Mesa, California 91942
12                                            Tel: (619) 234-9000
                                              Fax: (619) 750-0413
13                                            Email: jackbwinters@earthlink.net
                                              Email: gcapielo@einsurelaw.com
14                                            Email: sball@einsurelaw.com

15                                            Attorneys for Plaintiff CYNTHIA WOLLAM,
                                              as Trustee of the Irrevocable Trust of Miles E.
16                                            Wollam and Mary H. Wollam, Individually,
                                              and on Behalf of the Class
17
                                **DEMAND FOR JURY TRIAL**
18
         Plaintiff CYNTHIA WOLLAM, Individually, and on Behalf of the Class, hereby demands
19
   a jury trial on all issues triable by jury in this matter.
20
   Respectfully submitted:
21  DATED:  January 18, 2022                       **NICHOLAS & TOMASEVIC, LLP**

22                                     By:    */s/ Alex Tomasevic*
                                              Alex Tomasevic (SBN 245598)
23

24                                            Attorneys for Plaintiff CYNTHIA WOLLAM,
                                              as Trustee of the Irrevocable Trust of Miles E.
25                                            Wollam and Mary H. Wollam, Individually,
                                              and on Behalf of the Class

26

27

28

# EXHIBIT A



Transamerica
Life Insurance Services

Transamerica Center
1150 South Olive Street
Los Angeles, CA 90015

| Insured | MILES EUGENE WOLLAM | 92019226 | Policy Number |

| Face Amount | $50,000 | SEP 01 1985 | Date of Issue |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **IMPORTANT** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This policy provides valuable protection. As a general rule, it is seldom in the best interest of the policyholder to discontinue existing insurance for the purpose of purchasing a new policy. For the protection of policyholders, the replacement regulations of many states require written disclosure of all facts.

If anyone should try to convince you to discontinue this policy, ask him to submit an extra copy of his recommendations in writing, in addition to the number of copies required by our state's disclosure regulation, if any, so that it can be sent to me for analysis.

If you have any questions about this policy or your insurance program in general, my office is located at:

Address — **TRANSAMERICA OCCIDENTAL**
**LIFE INSURANCE COMPANY**
**CORPORATE CENTER PASADENA**
Telephone — **225 SOUTH LAKE AVENUE, STE. 525**
**PASADENA, CALIFORNIA 91101** Ex. A

TOC-403 ED. 9-81

002

Transamerica Occidental
Life Insurance Company
Home Office: Los Angeles, CA

**POLICY FORM        AL**
Individual Life Insurance

| INSURED | MILES EUGENE WOLLAM | 92019226 | POLICY NUMBER |

| FACE AMOUNT | $50,000 | SEP 01 1985 | DATE OF ISSUE |

Transamerica Occidental Life Insurance Company will pay, while this policy is in force, the death benefit to the beneficiary if the Insured dies prior to the Insured's age 100 or will pay the net cash value of this policy at age 100 subject to the provisions of this policy.

Signed for the Company at Los Angeles, California, on the date of issue.

*Agnes L. Hill*

VICE PRESIDENT AND SECRETARY

*David R Carpenter*

PRESIDENT

**Right to Examine and Return Policy Within 10 Days** -- The Owner, may, at any time within 10 days after receipt of this policy, return it for cancellation to us or to the agent through whom it was purchased. The return of the policy will void it from the beginning and any premiums paid will be refunded to the Owner.

Adjustable Life Insurance
Flexible Premiums Payable During
Life of Insured to Age 100

Death Benefit Payable at Death of
Insured Prior to Age 100
Net Cash Value Payable at
Insured's Age 100

Non-Participating - No Annual Dividends

Ex. A

003

This policy is a legal contract between the Policy Owner and Transamerica Occidental Life Insurance Company.

### READ YOUR POLICY CAREFULLY

### GUIDE TO POLICY PROVISIONS

| | Page | | | Page |
|---|---|---|---|---|
| Application Copy | after 12 | Owner's Rights | | 10 |
| Beneficiary's Rights | 10,11 | Payment of Cash Values and Loans | | 9 |
| Cash Value | 5 | Payment of Death Benefits | | 11 |
| Change of Beneficiary | 11 | Policy Data | | 2,2A,2B,2C |
| Death Benefit | 3 | Policy Loans | | 5 |
| Definitions | 3 | Policy Statements and Projections | | 9 |
| Riders | after 12 | Premiums | | 4 |
| Grace Period | 4 | Reinstatement of Lapsed Policy | | 4 |
| Guaranteed Values | 5 | Surrender Option | | 9 |
| Misstatement of Age | 10 | Table of Guaranteed Monthly Deduction Rates | | 2A |
| Non-Forfeiture Options | 6,9 | Table of Surrender Charges | | 7,8 |
| Option to Change the Face Amount | 6 | | | |

Ex. A
004

## P O L I C Y   D A T A

| | | | |
|---|---|---|---|
| LOAN INTEREST RATE | 7.40% IN ADVANCE | SEP 01 1985 | POLICY DATE |
| REINSTATEMENT INTEREST RATE | 6.00% | 57 | AGE OF INSURED |
| INSURED | MILES EUGENE WOLLAM | 92019226 | POLICY NUMBER |
| FACE AMOUNT | $50,000 | SEP 01 1985 | DATE OF ISSUE |
| OWNER | THE INSURED | STANDARD NON-SMOKER | CLASS OF RISK |

- - - - - - - - - - - - - - - - - - - - - -

THE CHARGE FOR ANY ADDITIONAL BENEFITS WHICH ARE PROVIDED BY RIDER IS SHOWN
BELOW.  ONLY A BRIEF DESCRIPTION IS GIVEN.  THE COMPLETE PROVISIONS ARE
INCLUDED IN THE RIDER.

| RIDER NUMBER | SCHEDULE OF ADDITIONAL BENEFITS | ANNUAL PREMIUM |
|---|---|---|
| | NONE | NO CHARGE |

- - - - - - - - - - - - - - - - - - - - - -

MINIMUM INITIAL PREMIUM: $140.10
PLANNED PERIODIC PREMIUMS: $125.00  MONTHLY

- - - - - - - - - - - - - - - - - - - - - -

NOTE:  THIS POLICY MAY TERMINATE PRIOR TO THE INSURED'S AGE 100 IF
(1) THE GROSS VALUE MINUS ANY LOAN IS LESS THAN THE MONTHLY DEDUCTION DUE, OR
(2) IN ANY OF THE FIRST 10 POLICY YEARS WE DO NOT RECEIVE THE REQUIRED PREMIUM
PER YEAR (EQUAL TO THE FACE AMOUNT MULTIPLIED BY .0005, OR $25.00, WHICHEVER
IS GREATER) AND YOUR POLICY HAS NO NET CASH VALUE AT THE END OF THAT POLICY YEAR.

P O L I C Y   D A T A   ( C O N T I N U E D )

TABLE OF GUARANTEED MONTHLY DEDUCTION RATES PER $1,000 *

| POLICY YEAR BEGINNING | POLICY EXCLUDING RIDERS | POLICY YEAR BEGINNING | POLICY EXCLUDING RIDERS |
|---|---|---|---|
| SEP 01 1985 | $0.77 | SEP 01 2007 | $7.59 |
| SEP 01 1986 | 1.14 | SEP 01 2008 | 8.24 |
| SEP 01 1987 | 1.24 | SEP 01 2009 | 8.96 |
| SEP 01 1988 | 1.35 | SEP 01 2010 | 9.78 |
| SEP 01 1989 | 1.48 | SEP 01 2011 | 10.69 |
| SEP 01 1990 | 1.62 | SEP 01 2012 | 11.69 |
| SEP 01 1991 | 1.77 | SEP 01 2013 | 12.75 |
| SEP 01 1992 | 1.94 | SEP 01 2014 | 13.85 |
| SEP 01 1993 | 2.12 | SEP 01 2015 | 14.97 |
| SEP 01 1994 | 2.33 | SEP 01 2016 | 16.11 |
| SEP 01 1995 | 2.54 | SEP 01 2017 | 17.28 |
| SEP 01 1996 | 2.78 | SEP 01 2018 | 18.49 |
| SEP 01 1997 | 3.04 | SEP 01 2019 | 19.75 |
| SEP 01 1998 | 3.31 | SEP 01 2020 | 21.13 |
| SEP 01 1999 | 3.61 | SEP 01 2021 | 22.68 |
| SEP 01 2000 | 3.98 | SEP 01 2022 | 24.66 |
| SEP 01 2001 | 4.39 | SEP 01 2023 | 27.64 |
| SEP 01 2002 | 4.85 | SEP 01 2024 | 32.05 |
| SEP 01 2003 | 5.35 | SEP 01 2025 | 40.02 |
| SEP 01 2004 | 5.88 | SEP 01 2026 | 54.84 |
| SEP 01 2005 | 6.43 | SEP 01 2027 | 83.33 |
| SEP 01 2006 | 7.00 | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

* TO FIND THE AMOUNT OF MONTHLY DEDUCTION DURING EACH POLICY YEAR, SEE THE
GUARANTEED VALUES SECTION.  A POLICY FEE OF $4.00 WILL ALSO BE INCLUDED IN
EACH MONTHLY DEDUCTION.

TABLE OF POLICY VALUES AND BENEFITS

ILLUSTRATIVE PREMIUMS (1)
GUARANTEED BASIS (2)

| END OF POLICY YEAR | PLANNED ANNUALIZED PREMIUM | DEATH BENEFIT | GROSS VALUE(3) | CASH VALUE(4) |
|---|---|---|---|---|
| 1 | $2,700.00 | $50,000 | $2,110 | $0 |
| 2 | 1,500.00 | 50,000 | 2,873 | 773 |
| 3 | 1,500.00 | 50,000 | 3,620 | 1,620 |
| 4 | 1,500.00 | 50,000 | 4,345 | 2,395 |
| 5 | 1,500.00 | 50,000 | 5,039 | 3,189 |
| 6 | 1,500.00 | 50,000 | 5,696 | 3,896 |
| 7 | 1,500.00 | 50,000 | 6,312 | 4,612 |
| 8 | 1,500.00 | 50,000 | 6,874 | 5,224 |
| 9 | 1,500.00 | 50,000 | 7,378 | 5,778 |
| 10 | 1,500.00 | 50,000 | 7,805 | 6,455 |
| 11 | 1,500.00 | 50,000 | 8,154 | 7,104 |
| 12 | 1,500.00 | 50,000 | 8,404 | 7,604 |
| 13 | 1,500.00 | 50,000 | 8,540 | 7,990 |
| 14 | 1,500.00 | 50,000 | 8,551 | 8,301 |
| 15 | 1,500.00 | 50,000 | 8,410 | 8,410 |
| 16 | 1,500.00 | 50,000 | 8,070 | 8,070 |
| 17 | 1,500.00 | 50,000 | 7,489 | 7,489 |
| 18 | 1,500.00 | 50,000 | 6,615 | 6,615 |
| 19 | 1,500.00 | 50,000 | 5,389 | 5,389 |
| 20 | 1,500.00 | 50,000 | 3,745 | 3,745 |
| AGE 60 | 1,500.00 | 50,000 | 3,620 | 1,620 |
| AGE 65 | 1,500.00 | 50,000 | 6,874 | 5,224 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(1) THE GROSS AND CASH VALUES RESULT FROM THE INTEREST RATES, MONTHLY
    DEDUCTIONS, AND THE TIMELY PAYMENT OF THE PLANNED ANNUALIZED PREMIUMS.
    PARTIAL SURRENDERS OR LOANS MAY CHANGE THESE RESULTS.

(2) RESULTS CALCULATED ON A GUARANTEED BASIS REFLECT GUARANTEED
    MONTHLY DEDUCTIONS AND THE GUARANTEED ANNUAL INTEREST RATE OF 4 %.

(3) GROSS VALUES ILLUSTRATED ON A GUARANTEED BASIS REFLECT ACCUMULATED NET
    PREMIUMS PLUS ACCRUED INTEREST AT THE GUARANTEED MINIMUM ANNUAL INTEREST
    RATE LESS ACCRUED GUARANTEED MAXIMUM MONTHLY DEDUCTIONS WHICH INCLUDE
    THE POLICY FEE BUT NOT THE COST OF ANY RIDERS.  WHILE A POLICY LOAN
    EXISTS, THE INTEREST RATE APPLICABLE TO THE GROSS VALUE SECURING THE
    LOAN MAY DIFFER FROM THE INTEREST RATE APPLICABLE TO THE GROSS VALUE NOT
    SECURING THE LOAN.

(4) CASH VALUE IS THE GROSS VALUE LESS ANY APPLICABLE SURRENDER CHARGE.

Ex. A
007

CURRENT MONTHLY DEDUCTIONS ARE NOT GUARANTEED AFTER THE FIRST YEAR, NOR ARE THEY ESTIMATES FOR THE FUTURE.

THE CURRENT ANNUAL INTEREST RATE IS SET WHEN THE FIRST PREMIUM IS PAID AND IS GUARANTEED UNTIL THE FIRST POLICY ANNIVERSARY. AT ANY TIME THEREAFTER, WE MAY DECLARE INTEREST RATES HIGHER, BUT NOT LOWER, THAN THE GUARANTEED MINIMUM ANNUAL INTEREST RATE.  WHILE A POLICY LOAN EXISTS, THE INTEREST RATE APPLICABLE TO THE GROSS VALUE SECURING THE LOAN MAY DIFFER FROM THE INTEREST RATES APPLICABLE TO THE GROSS VALUE NOT SECURING THE LOAN.

PREMIUMS ARE SUBJECT TO REFUND UNDER CONDITIONS DESCRIBED IN THE POLICY.

CURRENT ANNUAL INTEREST RATE:  10.25 % AS OF  AUG 12,1985   SUBJECT TO CHANGE UNTIL INITIAL PREMIUM IS PAID.

Ex. A

008

## DEFINITIONS

In this policy:

We, our or us means Transamerica Occidental Life Insurance Company.

Age means age on the nearest birthday.

The beneficiary is the person to receive the proceeds in the event of the Insured's death.

Cash Value means the gross value as described in the Guaranteed Values section, less any surrender charges.

Lapse means termination of the policy due to insufficient premium or gross value.

A loan is indebtedness to us for loans secured by this policy.

Loan Value means the maximum amount which may be borrowed under the loan provisions.

The Net Cash Value is the Cash Value of this policy less any loans.

A net premium is 91% of any premium received.

Any notice to be given under provisions of this policy will be sent to the last known address of the Owner and any assignee of record.

Reinstate means to restore coverage after the policy has lapsed.

A rider is an attachment to the policy which provides additional benefits.

## POLICY SUMMARY

This policy provides life insurance payable to the beneficiary in the event of the Insured's death prior to age 100.

There is a required premium per year for the first 10 policy years, otherwise the amount and frequency of premium payments may be varied. Premiums are payable as long as the Insured is living. At age 100, the net cash value will be paid to the Owner.

Additional benefits, if any, are provided by rider.

This is only a brief description. The insurance is fully described in the various provisions of the policy.

## DEATH BENEFIT

The death benefit is subject to policy provisions which may have an effect on the policy benefit payable, for example, Loans, Surrenders and Misstatement of Age or Sex.

The amount of the death benefit will be equal to the greater of:

(a)  the face amount plus the increase, if any, in the accrued gross value from the last policy anniversary to the date of death of the Insured; or

(b)  the death benefit factor multiplied by the gross value as of the date of death of the Insured.

### DEATH BENEFIT FACTORS

| Insured's Attained Age | Male Insured | Female Insured | Insured's Attained Age | Male Insured | Female Insured |
|---|---|---|---|---|---|
| 0 | 11.73 | 14.24 | 51 | 2.45 | 2.86 |
| 1 | 11.79 | 14.21 | 52 | 2.38 | 2.78 |
| 2 | 11.46 | 13.82 | 53 | 2.32 | 2.70 |
| 3 | 11.13 | 13.42 | 54 | 2.25 | 2.62 |
| 4 | 10.81 | 13.03 | 55 | 2.19 | 2.54 |
| 5 | 10.49 | 12.64 | 56 | 2.13 | 2.47 |
| 6 | 10.17 | 12.26 | 57 | 2.07 | 2.40 |
| 7 | 9.85 | 11.88 | 58 | 2.02 | 2.33 |
| 8 | 9.53 | 11.51 | 59 | 1.97 | 2.27 |
| 9 | 9.23 | 11.15 | 60 | 1.92 | 2.21 |
| 10 | 8.92 | 10.79 | 61 | 1.87 | 2.14 |
| 11 | 8.63 | 10.44 | 62 | 1.82 | 2.08 |
| 12 | 8.34 | 10.10 | 63 | 1.78 | 2.03 |
| 13 | 8.07 | 9.78 | 64 | 1.74 | 1.97 |
| 14 | 7.81 | 9.46 | 65 | 1.70 | 1.92 |
| 15 | 7.57 | 9.15 | 66 | 1.66 | 1.87 |
| 16 | 7.34 | 8.86 | 67 | 1.62 | 1.82 |
| 17 | 7.12 | 8.58 | 68 | 1.59 | 1.77 |
| 18 | 6.92 | 8.31 | 69 | 1.55 | 1.73 |
| 19 | 6.72 | 8.04 | 70 | 1.52 | 1.69 |
| 20 | 6.53 | 7.79 | 71 | 1.49 | 1.64 |
| 21 | 6.34 | 7.54 | 72 | 1.46 | 1.60 |
| 22 | 6.15 | 7.30 | 73 | 1.44 | 1.56 |
| 23 | 5.97 | 7.06 | 74 | 1.41 | 1.53 |
| 24 | 5.80 | 6.84 | 75 | 1.39 | 1.49 |
| 25 | 5.62 | 6.62 | 76 | 1.36 | 1.46 |
| 26 | 5.45 | 6.40 | 77 | 1.34 | 1.43 |
| 27 | 5.28 | 6.19 | 78 | 1.32 | 1.40 |
| 28 | 5.11 | 5.99 | 79 | 1.30 | 1.38 |
| 29 | 4.94 | 5.80 | 80 | 1.29 | 1.35 |
| 30 | 4.79 | 5.61 | 81 | 1.27 | 1.33 |
| 31 | 4.63 | 5.42 | 82 | 1.25 | 1.30 |
| 32 | 4.48 | 5.25 | 83 | 1.24 | 1.28 |
| 33 | 4.33 | 5.07 | 84 | 1.22 | 1.26 |
| 34 | 4.19 | 4.91 | 85 | 1.21 | 1.24 |
| 35 | 4.06 | 4.75 | 86 | 1.20 | 1.23 |
| 36 | 3.92 | 4.59 | 87 | 1.19 | 1.22 |
| 37 | 3.80 | 4.44 | 88 | 1.18 | 1.20 |
| 38 | 3.67 | 4.30 | 89 | 1.16 | 1.19 |
| 39 | 3.56 | 4.16 | 90 | 1.16 | 1.18 |
| 40 | 3.44 | 4.03 | 91 | 1.15 | 1.17 |
| 41 | 3.33 | 3.90 | 92 | 1.14 | 1.16 |
| 42 | 3.23 | 3.78 | 93 | 1.12 | 1.15 |
| 43 | 3.13 | 3.66 | 94 | 1.11 | 1.14 |
| 44 | 3.03 | 3.55 | 95 | 1.10 | 1.13 |
| 45 | 2.94 | 3.44 | 96 | 1.09 | 1.12 |
| 46 | 2.85 | 3.33 | 97 | 1.07 | 1.11 |
| 47 | 2.77 | 3.23 | 98 | 1.06 | 1.10 |
| 48 | 2.68 | 3.13 | 99 | 1.05 | 1.09 |
| 49 | 2.60 | 3.04 | 100 | 1.00 | 1.00 |
| 50 | 2.53 | 2.95 | | | |

The death benefit factors in the first policy year will be increased by the product of the Insured's attained age death benefit factor and the current annual interest rate.

## PREMIUMS

**Premiums --** Subject to the Premium Limitation provision and the following conditions, we will accept any amount submitted to us as a premium while this policy is in force:

1. The initial premium which is shown in the policy data is payable on the policy date. Subsequent premiums may be paid at our Home Office or to an agent or cashier authorized by us. We will issue a receipt upon request.

2. During the first ten policy years, if the policy has no net cash value as of the policy anniversary date, the amount of premium received during that policy year must equal or exceed the required premium per year shown in the policy data.

3. Premiums can be paid at any time, but only if the amount of each premium is at least $25.

**Continuation of Insurance --** Between premium payments, this policy is automatically continued at the same face amount and with any additional benefits provided by rider, subject to the Grace Period provision and as explained in the Monthly Deduction section.

**Premium Limitation --** We reserve the right to refund premium(s) paid, whether scheduled or not, during each policy year which in the total:

   (a) increases the difference between the death benefit and the gross value, and

   (b) exceeds the greater of $20 per thousand of face amount or 3 times the monthly deductions for said policy year.

We also reserve the right to refund unscheduled premiums which in total exceed $25,000 in any 12 month period.

Except for a policy issued as part of a tax free exchange of insurance policies, we shall refund any premium that would otherwise cause the death benefit to be treated differently from the death benefit of a fixed premium life insurance policy under both the U.S. Internal Revenue Code in effect when this policy was issued and the U.S. Internal Revenue Code in effect when such premium was received. If this policy was issued as part of a tax free exchange of insurance policies, under certain conditions the death benefit may be includable in gross income for determining U.S. income tax.

Any refund will be made no later than 60 days after the policy anniversary following the premium payment(s).

**Grace Period for Paying Premiums --** If (1) the gross value minus any loan is less than the monthly deduction due, or (2) in any of the first 10 policy years we do not receive the required premium per year and your policy has no net cash value, we will notify you that a premium sufficient to keep this policy in force must be received within the grace period of 31 days from the date of the notice or this policy will lapse. During this grace period no interest will be charged on the premium due. If the Insured dies during the grace period before the premium is paid, the amount required to provide insurance to the date of the Insured's death will be deducted from the death benefits payable under this policy.

**Policy Date --** The policy date shown in the policy data will be used to determine the monthly dates, policy anniversaries and policy years.

**Termination of Insurance --** This policy will terminate on the earliest of:

1. the monthly date following the receipt of the Owner's written request to terminate;

2. the policy anniversary nearest the Insured's age 100; or

3. the date of lapse.

**Reinstatement of Lapsed Policy --** If this policy lapses, it may be reinstated unless it has been surrendered. The reinstatement will be subject to the following conditions:

1. The request for reinstatement must be made in writing within five years after the date of lapse and before the Insured's age 100;

2. The Insured must continue to be insurable by our standards;

3. Any loans which existed at the time of lapse must be paid or reinstated with interest compounded annually at the interest rate of 6%;

4. A premium sufficient to cover two monthly deductions at the time of lapse and three monthly deductions due at the time of reinstatement must be paid.

5. The reinstated policy will still be subject to any required premium per year for the first 10 policy years. (See Premiums Provision, 2.)

Ex. A
010

## GUARANTEED VALUES

The cash value as described in this section may be borrowed, used to provide Paid-up Insurance, applied under Continuation of Insurance, or taken in cash as a partial or full surrender of this policy. We guarantee that the cash value always equals or exceeds that required by the law in effect at issue in the state in which this policy is delivered. The monthly deductions and the effect they have on the gross values are described in this section.

The gross value while this policy is in force is the sum of all net premiums less any refunds, plus all accrued interest, less the sum of all accrued monthly deductions and a pro rata portion of the monthly deduction to that date, less any partial surrenders.

A Table of Policy Values based upon the data given at the time of issue is included in this policy. As the declared interest rates, premium payments and other factors vary from illustrated information, the policy values may change. An annual statement of actual policy values will be provided as guaranteed in the policy. Illustrations based on then present values and future assumed values are available to the Owner upon request. If the gross value for the end of any policy year is zero, a premium larger than the planned premium may have to be paid to keep the policy in force.

Guaranteed Interest Rates -- The net premium accrues simple interest from the date the premium is received in the Home Office. Interest is credited annually on each policy anniversary.

The guaranteed minimum interest rate for all policy years is 4%.

At any time, we may declare a higher interest rate than the guaranteed minimum interest rate. Declared interest rates will replace the guaranteed interest rate until such time as we declare different rates. The declared interest rates will never be less than the guaranteed minimum interest rate shown in the policy data.

The interest rate for any portion of the gross value equal to the amount of any policy loan will be at the effective annual loan interest rate (maximum 8%) less 2.5%.

Monthly Deduction Rates -- At the beginning of each policy year, the rate for the monthly deduction is determined by using the Insured's age as of that policy year.

A Table of Guaranteed Monthly Deduction Rates is in the policy data and is guaranteed. However, we may use lower rates than these guaranteed monthly deduction rates. We will never exceed the guaranteed monthly deduction rates.

Monthly Deduction -- On each monthly date, the gross value will be reduced by the monthly deduction for the prior month. The monthly deduction at the end of each policy month is equal to the monthly rate times .001 times the difference between the death benefit and the gross value at the beginning of the policy year. A policy fee will also be included in the monthly deduction and is shown in the policy data.

Policy Loans -- We will make a loan subject to the following conditions:

1. The maximum loan amount will be the gross value of the policy as of the date of the loan request less:

   a. any existing loan(s);

   b. interest on the amount of the loan to the end of the policy year; and

   c. an amount equal to the greater of the surrender charge or three monthly deductions.

2. Interest on the loan at the loan interest rate must be paid annually in advance. Interest not paid when due will be added to the loan and will bear interest at the same rate.

3. The loan must be secured by satisfactory assignment of the policy. The loan constitutes a first lien on the policy in our favor.

4. The loan will be secured by that portion of the gross value equal to the amount of any loan.

Loan Repayment -- Any part of a loan may be repaid at any time during the lifetime of the Insured and prior to the Insured's age 100.

Ex. A

011

All funds received will be credited to this policy as a premium payment unless clearly marked for a loan repayment. On the date received, loan repayments will be applied to the portion of gross value which is securing a loan.

Subject to the non-forfeiture provision, failure to repay the loan will not terminate this policy.

**Partial Surrender --** Upon written request, the Owner may surrender a portion of this policy for its value.

Partial surrenders of the net cash value will be allowed. A partial surrender charge as well as the surrender amount requested will be deducted from the gross value. The face amount will also be reduced by the surrender amount plus the partial surrender charge.

The partial surrender charge is the greater of:

1) $25, or

2) the proportionate full surrender charge.

The proportionate full surrender charge may be calculated as follows:

Let X = surrender amount received by the Owner
a = full surrender charge per 1,000 of face amount

then the proportionate full surrender charge =

$$X \text{ times } \frac{a}{1000 - a}$$

In any policy year, the maximum amount which an Owner may request and receive by partial surrender without being forced to a full surrender of the policy (and pay the full surrender charge) is:

1) the policy gross value,

minus  2) any indebtedness,

minus  3) the sum of three monthly deductions,

minus  4) the greater of $25 or the full surrender charge.

Any request for an amount that would exceed the maximum amount described above will be treated as a request for full surrender of the policy.

**Option to Change the Face Amount --** The Owner may request an increase or decrease of the face amount of this policy if all the conditions are met.

The following conditions will apply:

1.  A written request must be made to us.

2.  At the request date, this policy must be in force and the Insured must be living.

3.  We must receive evidence of insurability satisfactory to us if there is to be an increase in the face amount of this policy.

4.  The amount of change in face amount requested cannot be for less than $25,000.

5.  The new face amount may not be less than our published minimum for this plan.

6.  Any increase or decrease of the face amount of this policy may cause a change in the monthly deduction rates to be charged.

7.  A surrender charge may result from any decrease in the face amount.

8.  If the face amount increases, a new policy will be issued. The contestability provision will start anew in the new policy, but only to the extent that the face amount of the new policy will exceed the amount of this policy.

**Non-Forfeiture Options --** The policy may be continued or surrendered under one of the following options:

**Option 1. Paid-Up Life --** Subject to the conditions of this option, this policy may be exchanged for a single premium paid-up whole life policy.

The following conditions will apply:

(a) The policy must be in force on the requested date.

(b) All rights under this policy will be surrendered in exchange for the paid-up policy.

(c) The amount of paid-up insurance is calculated by using the net cash value divided by the net single premium for the Insured's attained age. The net single premiums are shown in the table on page 9.

The total net single premium is calculated by taking the face amount of the paid-up policy per thousand and any fraction thereof and multiplying it by the net single premium.

1-131 11-185

Ex. A
012

## Table of Surrender Charges
### Per $1,000 Face Amount

Policy Year

| Issue Age | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16+ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 1 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 2 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 3 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 4 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 5 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 6 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 7 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 8 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 10 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 11 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 12 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 13 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 14 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 15 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 16 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 17 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 18 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 19 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 20 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 8 | 7 | 5 | 4 | 3 | 1 | 0 |
| 21 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 9 | 8 | 6 | 5 | 3 | 2 | 0 |
| 22 | 11 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 9 | 8 | 6 | 5 | 3 | 2 | 0 |
| 23 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 9 | 9 | 8 | 6 | 5 | 3 | 2 | 0 |
| 24 | 12 | 12 | 12 | 12 | 12 | 12 | 11 | 11 | 11 | 11 | 9 | 7 | 6 | 4 | 2 | 0 |
| 25 | 12 | 12 | 12 | 12 | 12 | 12 | 11 | 11 | 11 | 10 | 8 | 7 | 5 | 3 | 2 | 0 |
| 26 | 12 | 12 | 12 | 12 | 12 | 12 | 11 | 11 | 11 | 10 | 8 | 7 | 5 | 3 | 2 | 0 |
| 27 | 14 | 13 | 13 | 13 | 13 | 13 | 13 | 12 | 12 | 12 | 10 | 8 | 6 | 4 | 2 | 0 |
| 28 | 14 | 13 | 13 | 13 | 13 | 13 | 13 | 12 | 12 | 12 | 10 | 8 | 6 | 4 | 2 | 0 |
| 29 | 14 | 13 | 13 | 13 | 13 | 13 | 13 | 12 | 12 | 12 | 10 | 8 | 6 | 4 | 2 | 0 |
| 30 | 15 | 15 | 15 | 15 | 14 | 14 | 14 | 14 | 13 | 13 | 11 | 9 | 7 | 4 | 2 | 0 |
| 31 | 15 | 15 | 15 | 15 | 14 | 14 | 14 | 14 | 13 | 13 | 11 | 9 | 7 | 4 | 2 | 0 |
| 32 | 16 | 16 | 16 | 16 | 16 | 16 | 15 | 15 | 14 | 14 | 12 | 9 | 7 | 5 | 2 | 0 |
| 33 | 17 | 16 | 16 | 16 | 16 | 16 | 15 | 15 | 14 | 14 | 12 | 9 | 7 | 5 | 2 | 0 |
| 34 | 18 | 18 | 18 | 17 | 17 | 17 | 17 | 16 | 16 | 15 | 13 | 10 | 8 | 5 | 3 | 0 |
| 35 | 18 | 18 | 18 | 17 | 17 | 17 | 16 | 16 | 15 | 15 | 13 | 10 | 8 | 5 | 3 | 0 |
| 36 | 19 | 19 | 19 | 19 | 19 | 18 | 18 | 17 | 17 | 16 | 13 | 11 | 8 | 5 | 3 | 0 |
| 37 | 20 | 19 | 19 | 19 | 18 | 18 | 18 | 17 | 17 | 16 | 13 | 11 | 8 | 5 | 3 | 0 |
| 38 | 21 | 21 | 20 | 20 | 20 | 20 | 19 | 18 | 18 | 17 | 14 | 11 | 9 | 6 | 3 | 0 |
| 39 | 21 | 21 | 20 | 20 | 20 | 19 | 19 | 18 | 18 | 17 | 14 | 11 | 9 | 6 | 3 | 0 |

Ex. A
013

## Table of Surrender Charges
## Per $1,000 Face Amount

### Policy Year

| Issue Age | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16+ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 40 | 22 | 22 | 22 | 22 | 21 | 21 | 20 | 19 | 19 | 18 | 15 | 12 | 9 | 6 | 3 | 0 |
| 41 | 24 | 24 | 23 | 23 | 23 | 22 | 21 | 21 | 20 | 19 | 16 | 13 | 10 | 6 | 3 | 0 |
| 42 | 24 | 24 | 23 | 23 | 22 | 22 | 21 | 21 | 20 | 19 | 16 | 13 | 10 | 6 | 3 | 0 |
| 43 | 25 | 25 | 25 | 24 | 24 | 23 | 23 | 22 | 21 | 20 | 17 | 13 | 10 | 7 | 3 | 0 |
| 44 | 27 | 27 | 26 | 26 | 25 | 25 | 24 | 23 | 22 | 21 | 18 | 14 | 11 | 7 | 4 | 0 |
| 45 | 29 | 28 | 28 | 27 | 27 | 26 | 26 | 25 | 24 | 23 | 19 | 15 | 12 | 8 | 4 | 0 |
| 46 | 31 | 30 | 30 | 29 | 29 | 28 | 27 | 26 | 25 | 24 | 20 | 16 | 12 | 8 | 4 | 0 |
| 47 | 32 | 31 | 31 | 30 | 29 | 29 | 28 | 27 | 26 | 25 | 21 | 17 | 13 | 8 | 4 | 0 |
| 48 | 33 | 32 | 32 | 31 | 30 | 30 | 29 | 28 | 27 | 26 | 22 | 17 | 13 | 9 | 4 | 0 |
| 49 | 34 | 33 | 33 | 32 | 31 | 31 | 30 | 29 | 28 | 27 | 23 | 18 | 14 | 9 | 5 | 0 |
| 50 | 35 | 34 | 34 | 33 | 32 | 32 | 31 | 30 | 29 | 29 | 24 | 19 | 15 | 10 | 5 | 0 |
| 51 | 36 | 36 | 35 | 34 | 33 | 33 | 32 | 31 | 30 | 29 | 24 | 19 | 15 | 10 | 5 | 0 |
| 52 | 37 | 36 | 36 | 35 | 34 | 34 | 33 | 32 | 31 | 30 | 25 | 20 | 15 | 10 | 5 | 0 |
| 53 | 38 | 37 | 36 | 35 | 34 | 34 | 33 | 32 | 31 | 30 | 25 | 20 | 15 | 10 | 5 | 0 |
| 54 | 39 | 38 | 37 | 36 | 36 | 35 | 34 | 33 | 32 | 31 | 26 | 21 | 16 | 10 | 5 | 0 |
| 55 | 41 | 40 | 39 | 38 | 37 | 36 | 35 | 34 | 33 | 32 | 27 | 21 | 16 | 11 | 5 | 0 |
| 56 | 42 | 41 | 40 | 39 | 38 | 37 | 36 | 34 | 33 | 32 | 27 | 21 | 16 | 11 | 5 | 0 |
| 57 | 44 | 43 | 42 | 40 | 39 | 37 | 36 | 34 | 33 | 32 | 27 | 21 | 16 | 11 | 5 | 0 |
| 58 | 45 | 43 | 42 | 40 | 39 | 37 | 36 | 34 | 33 | 32 | 27 | 21 | 16 | 11 | 5 | 0 |
| 59 | 45 | 43 | 42 | 40 | 39 | 37 | 36 | 34 | 33 | 32 | 27 | 21 | 16 | 11 | 5 | 0 |
| 60 | 45 | 43 | 42 | 40 | 39 | 37 | 36 | 34 | 33 | 32 | 27 | 21 | 16 | 11 | 5 | 0 |
| 61 | 45 | 43 | 41 | 40 | 38 | 37 | 35 | 34 | 33 | 31 | 26 | 21 | 16 | 10 | 5 | 0 |
| 62 | 45 | 43 | 41 | 40 | 38 | 37 | 35 | 34 | 33 | 31 | 26 | 21 | 16 | 10 | 5 | 0 |
| 63 | 45 | 43 | 41 | 40 | 38 | 37 | 35 | 34 | 32 | 31 | 26 | 21 | 16 | 10 | 5 | 0 |
| 64 | 44 | 43 | 41 | 39 | 38 | 36 | 35 | 34 | 32 | 31 | 26 | 21 | 16 | 10 | 5 | 0 |
| 65 | 44 | 43 | 41 | 39 | 38 | 36 | 35 | 34 | 32 | 31 | 26 | 21 | 16 | 10 | 5 | 0 |
| 66 | 44 | 42 | 41 | 39 | 38 | 36 | 34 | 34 | 32 | 31 | 26 | 21 | 16 | 10 | 5 | 0 |
| 67 | 44 | 42 | 41 | 39 | 38 | 36 | 35 | 33 | 32 | 31 | 26 | 21 | 16 | 10 | 5 | 0 |
| 68 | 44 | 42 | 41 | 39 | 38 | 36 | 35 | 33 | 32 | 30 | 25 | 20 | 15 | 10 | 5 | 0 |
| 69 | 44 | 42 | 40 | 39 | 37 | 36 | 35 | 33 | 32 | 30 | 25 | 20 | 15 | 10 | 5 | 0 |
| 70 | 44 | 42 | 40 | 39 | 37 | 36 | 34 | 33 | 31 | 30 | 25 | 20 | 15 | 10 | 5 | 0 |
| 71 | 43 | 42 | 40 | 39 | 37 | 36 | 34 | 32 | 31 | 29 | 24 | 19 | 15 | 10 | 5 | 0 |
| 72 | 43 | 42 | 40 | 38 | 37 | 35 | 34 | 32 | 31 | 29 | 24 | 19 | 15 | 10 | 5 | 0 |
| 73 | 43 | 42 | 40 | 38 | 37 | 35 | 33 | 32 | 30 | 29 | 24 | 19 | 15 | 10 | 5 | 0 |
| 74 | 43 | 41 | 40 | 38 | 37 | 35 | 33 | 32 | 30 | 29 | 24 | 19 | 15 | 10 | 5 | 0 |
| 75 | 43 | 41 | 40 | 38 | 36 | 35 | 33 | 31 | 30 | 28 | 23 | 19 | 14 | 9 | 5 | 0 |
| 76 | 43 | 41 | 40 | 38 | 36 | 35 | 33 | 31 | 30 | 28 | 23 | 19 | 14 | 9 | 5 | 0 |
| 77 | 43 | 41 | 40 | 38 | 36 | 34 | 33 | 31 | 30 | 28 | 23 | 19 | 14 | 9 | 5 | 0 |
| 78 | 43 | 41 | 39 | 38 | 36 | 34 | 33 | 31 | 29 | 28 | 23 | 19 | 14 | 9 | 5 | 0 |
| 79 | 43 | 41 | 39 | 38 | 36 | 34 | 33 | 31 | 29 | 28 | 23 | 19 | 14 | 9 | 5 | 0 |
| 80 | 43 | 41 | 39 | 38 | 36 | 34 | 32 | 31 | 29 | 27 | 23 | 18 | 14 | 9 | 5 | 0 |

Ex. A
014

The Insured must submit satisfactory evidence of insurability if the difference between the amount of paid-up insurance and the total net single premium for the paid-up policy is greater than the difference under this policy between the death benefit and the gross value on the date this option is elected.

If satisfactory evidence of insurability is not received by us, then the amount of the paid-up insurance elected under this option will be reduced accordingly. Any remaining value after the purchase of Paid-Up Insurance will be refunded to the Owner.

(d) The paid-up policy will be issued and dated as of the date of surrender of this policy.

(e) The premiums used for the single premium paid-up insurance will be those in effect as of the date of surrender of this policy. However, they will not exceed the rates which are shown in the Table of Maximum Single Premiums for Paid-Up Insurance on this page.

(f) The cash surrender value of any paid-up insurance if surrendered within 30 days of a policy anniversary will not be less than the cash surrender value on such anniversary.

**Option 2. Full Surrender** -- This policy may be surrendered for its cash surrender value. The cash surrender value on the date of request is the gross value, less a surrender charge and any existing loans. We will also deduct a pro rata portion of the monthly deduction for the period from the prior monthly date to the date of surrender.

The surrender charge that will be applied on a full surrender is determined by using the factor shown in the Table of Surrender Charges on pages 7 and 8. The factor for the issue age of the Insured and duration of the policy, is applied to the face amount of the policy. The surrender charge is zero after 16 policy years.

If no option is selected, Option 1--Paid-Up Life, will apply automatically as described on page 6.

## TABLE OF MAXIMUM SINGLE PREMIUMS FOR PAID-UP INSURANCE PER $1,000

| Attained Age | Male | Female | Attained Age | Male | Female | Attained Age | Male | Female |
|---|---|---|---|---|---|---|---|---|
| 0 | 85.27 | 70.26 | 35 | 246.82 | 210.91 | 70 | 658.97 | 595.21 |
| 1 | 84.86 | 70.38 | 36 | 255.13 | 218.06 | 71 | 672.38 | 610.40 |
| 2 | 87.28 | 72.39 | 37 | 263.68 | 225.42 | 72 | 685.67 | 625.75 |
| 3 | 89.87 | 74.54 | 38 | 272.48 | 232.98 | 73 | 698.74 | 641.14 |
| 4 | 92.57 | 76.79 | 39 | 281.53 | 240.76 | 74 | 711.50 | 656.44 |
| | | | | | | | | |
| 5 | 95.42 | 79.15 | 40 | 290.81 | 248.72 | 75 | 723.89 | 671.55 |
| 6 | 98.42 | 81.62 | 41 | 300.33 | 256.20 | 76 | 735.90 | 686.42 |
| 7 | 101.59 | 84.21 | 42 | 310.07 | 265.20 | 77 | 747.53 | 701.03 |
| 8 | 104.93 | 86.93 | 43 | 320.05 | 273.73 | 78 | 758.83 | 715.40 |
| 9 | 108.45 | 89.77 | 44 | 330.27 | 282.46 | 79 | 769.87 | 729.56 |
| | | | | | | | | |
| 10 | 112.14 | 92.73 | 45 | 340.71 | 291.40 | 80 | 780.70 | 743.52 |
| 11 | 115.98 | 95.82 | 46 | 351.39 | 300.57 | 81 | 791.30 | 757.24 |
| 12 | 119.99 | 99.04 | 47 | 362.31 | 309.97 | 82 | 801.63 | 770.65 |
| 13 | 123.99 | 102.35 | 48 | 373.47 | 319.61 | 83 | 811.61 | 783.65 |
| 14 | 128.09 | 105.77 | 49 | 384.88 | 329.50 | 84 | 821.13 | 796.13 |
| | | | | | | | | |
| 15 | 132.21 | 109.29 | 50 | 396.52 | 339.62 | 85 | 830.16 | 808.05 |
| 16 | 136.35 | 112.91 | 51 | 408.42 | 349.98 | 86 | 838.69 | 819.41 |
| 17 | 140.51 | 116.63 | 52 | 420.52 | 360.58 | 87 | 846.79 | 830.24 |
| 18 | 144.70 | 120.46 | 53 | 432.83 | 371.42 | 88 | 854.55 | 840.60 |
| 19 | 148.97 | 124.42 | 54 | 445.31 | 382.48 | 89 | 862.08 | 850.59 |
| | | | | | | | | |
| 20 | 153.36 | 128.51 | 55 | 457.94 | 393.77 | 90 | 869.51 | 860.32 |
| 21 | 157.89 | 132.74 | 56 | 470.72 | 405.31 | 91 | 877.02 | 869.92 |
| 22 | 162.61 | 137.13 | 57 | 483.63 | 417.11 | 92 | 884.79 | 879.56 |
| 23 | 167.54 | 141.68 | 58 | 496.69 | 429.21 | 93 | 893.09 | 889.45 |
| 24 | 172.70 | 146.39 | 59 | 509.89 | 441.65 | 94 | 902.20 | 899.83 |
| | | | | | | | | |
| 25 | 178.11 | 151.28 | 60 | 523.25 | 454.44 | 95 | 912.36 | 910.95 |
| 26 | 183.79 | 156.36 | 61 | 536.73 | 467.57 | 96 | 923.66 | 922.94 |
| 27 | 189.74 | 161.61 | 62 | 550.31 | 481.02 | 97 | 935.99 | 935.70 |
| 28 | 195.96 | 167.06 | 63 | 563.95 | 494.72 | 98 | 948.89 | 948.81 |
| 29 | 202.44 | 172.70 | 64 | 577.62 | 508.60 | 99 | 961.54 | 961.54 |
| | | | | | | | | |
| 30 | 209.18 | 178.54 | 65 | 591.26 | 522.62 | | | |
| 31 | 216.20 | 184.58 | 66 | 604.87 | 536.77 | | | |
| 32 | 223.46 | 190.83 | 67 | 618.44 | 551.06 | | | |
| 33 | 230.99 | 197.30 | 68 | 631.97 | 565.53 | | | |
| 34 | 238.78 | 204.00 | 69 | 645.48 | 580.24 | | | |

### PAYMENT OF CASH VALUE AND LOANS

We may defer the payment of partial or full surrender values and the making of a loan for a period of not more than six months after we receive written request for the surrender or loan. We will not defer any loan made to pay premiums due us on any policy.

### POLICY STATEMENTS AND PROJECTIONS

At least once a year, we will send a statement showing the face amount, policy value, loan transactions, partial surrenders, premiums paid and charges as of the statement date. Upon written request at any time we will send without charge a projection of benefits and values.

Ex. A
015

## BASIS OF COMPUTATION

The cash values of the policy are not less than the minimum values required by the state in which this policy is delivered. The cash values are based on the guaranteed monthly deduction rates and the guaranteed interest rate as defined in the Guaranteed Values section of this policy. Deaths are assumed to occur uniformly throughout the policy year, and proceeds are assumed to be paid at the end of the policy month of death.

The method of computation of cash values and non-forfeiture benefits has been filed as required with the Supervisory Official of the State in which this policy is delivered.

## GENERAL PROVISIONS

Incontestability of the Policy -- This policy will be incontestable after it has been in force during the Insured's lifetime for two years from the date of issue, except for non-payment of premiums. This provision does not apply to any rider providing benefits specifically for disability or death by accident.

Amount Payable Is Limited in the Event of Suicide -- If the Insured dies by suicide, while sane or insane, within two years from the date of issue, our liability will be limited to the amount of the premiums paid.

Misstatement of Age or Sex in the Application -- If a misstatement of age or sex is discovered while the Insured is living, we will adjust the death benefit or gross value to the amount based upon the Insured's correct age and sex. If a misstatement of age or sex is discovered after the Insured's death, we will adjust the death benefit.

The Contract Consists of the Policy and the Application -- We have issued this policy in consideration of the application and payment of the premiums. A copy of the application is attached and is a part of this policy. The policy with the application make the entire contract. All statements made by or for the Insured will be considered representations and not warranties. We will not use any statement in defense of a claim unless it is made in the application and a copy of the application is attached to this policy when issued.

Who Is Authorized to Make Changes in the Policy -- Only our President or a Vice President together with our Secretary or an Assistant Secretary have the authority to make any change in this policy and then only in writing.

Owner of the Policy -- Before the Insured's death, only the Owner will be entitled to the rights granted by this policy. If the Owner is an individual and dies before the Insured, the rights of the Owner belong to the executor or administrator of the Owner's estate unless otherwise provided in this policy. If the Owner is a partnership, the rights belong to the partnership as it exists when a right is exercised.

Assignment of the Policy -- We are not responsible for the adequacy of any assignment. However, when an assignment is filed with us and recorded by us at our Home Office, the Owner's rights and those of any revocable beneficiary will be subject to it.

No Dividends are Payable -- This is non-participating insurance and does not participate in our profits or surplus. We do not distribute past surplus or recover past losses by a change in the monthly deduction rates. Any change in the monthly deduction rates will be prospective and will be subject to our expectations as to future cost factors. Such cost factors include mortality, expenses, interest and persistency.

Notice -- Any notice to be given under provisions of this policy will be sent to the last known address of the Owner and any assignee of record.

## BENEFICIARY PROVISIONS

Who Receives the Death Benefit -- Any benefit payable because of the death of the Insured will be paid to the beneficiary. Unless changed as provided in this policy, the beneficiary will be as designated in the application. If the beneficiary is a partnership, any benefits will be paid to the partnership as it existed at the time of the Insured's death.

If the Beneficiary Dies -- The interest of any beneficiary who dies before the Insured will terminate at the death of the beneficiary. The interest of any beneficiary who dies at the time of, or within 30 days after, the Insured's death will also terminate if no benefits have been paid to that beneficiary. If the interest of all designated beneficiaries has terminated, any benefits payable will be paid to the Owner of this policy. If the Owner is not living at that time, any benefits payable will be paid to the executor or administrator of the Owner's estate.

Ex. A
016

How to Change a Beneficiary -- The Owner may change the beneficiary designation by filing a satisfactory written notice with us. A change of beneficiary will not be effective until recorded by us at our Home Office. When recorded, even if the Insured is not then living, the change will take effect on the date the notice was signed, except that any benefits paid before we record a change of beneficiary will not be subject to the change. A beneficiary designated irrevocably may not be changed without the written consent of that beneficiary.

Protection of the Death Benefit -- To the extent permitted by law, no death benefit will be subject to the claims of any creditors of the beneficiary or to any legal process against the beneficiary.

## PAYMENT OF THE DEATH BENEFIT

Proof of Death -- Any benefit payable because of the death of the Insured will be paid when we receive due proof of the Insured's death. Such proof must be submitted to us at our Home Office. Appropriate forms will be made available to the beneficiary upon request. Any of our agents will assist in completing these forms without charge. All payments by us are payable at our Home Office.

Loans -- Loans will be deducted from the death benefit in any settlement under this policy.

## SETTLEMENT PROVISIONS

All benefits payable by us under the provisions of this policy will be paid when due in a lump sum unless a settlement option is selected. Prior to the Insured's death, the Owner may elect an option for payment of death benefits upon the death of the Insured. After the Insured's death the beneficiary may select an option, subject to any settlement agreements in effect at the time of the Insured's death. These options are also available to the Owner for payment of surrender or maturity benefits, if available under this policy. Upon satisfactory written request, we will pay the benefit when due in accordance with one of these options.

Option A: Instalments for a Guaranteed Period -- We will pay the benefit and accumulated interest in equal instalments for a guaranteed period of from one to thirty years, as requested. The instalments may be paid monthly, quarterly, semi-annually or annually. See Table A on page 12.

Option B: Instalments for Life with Guaranteed Period -- We will pay the benefit in equal monthly instalments as long as the payee is living, but in no event for a lesser period than the guaranteed period selected. The guaranteed period may be either 10 years or 20 years. See Table B on page 12.

Option C: Benefit Deposited with Interest -- We will hold the benefit on deposit with interest earned at the annual interest rate being paid as of the date of death, surrender or maturity. In no event will we pay less than 2 1/2% annual interest. Earned interest may be paid annually, semi-annually, quarterly or monthly as selected. The benefit and earned interest may be withdrawn in whole or in part at any time.

Option D: Instalments of a Selected Amount -- We guarantee to pay instalments of a selected amount until all of the benefit and accumulated interest have been fully paid.

Option E: Annuity -- We will apply the benefit as a single premium to buy an annuity payable to one or two payees for life with or without a guaranteed period, as selected. The annuity payment will not be less than what our current annuity contracts are then paying.

Any other method of settlement may be arranged subject to our agreement. The payee must be an individual receiving payment in his or her own right. The amount applied under any option must be at least $1,000 and must provide payments of at least $10 to each payee.

The first instalment under an option will be payable on the date of death, maturity or surrender, whichever is applicable. Any unpaid balance held under Options A or D will accumulate interest at the rate being paid at the time of settlement, but in no event will we pay less than 3% annual interest. Any benefit held by us will be combined with our general assets.

If the payee does not live to receive all guaranteed payments under Options A, B, D or E or any amount on deposit under Option C, plus any accumulated interest, we will pay the remaining benefit in a lump sum, unless otherwise directed. The lump sum will be the present value of any future guaranteed payments, commuted at a rate equal to the guaranteed interest rate.

Ex. A
017

## TABLE A
### Instalments for Each $1,000 Payable under Option A

Multiply the Monthly Instalment by 11.83895 for Annual, by 5.96322 for Semi-Annual, or by 2.99263 for Quarterly Instalments.

| Guaranteed Period (Yrs.) | Monthly Instalment | Guaranteed Period (Yrs.) | Monthly Instalment | Guaranteed Period (Yrs.) | Monthly Instalment |
|---|---|---|---|---|---|
| 1 | $84.47 | 11 | $8.86 | 21 | $5.32 |
| 2 | 42.86 | 12 | 8.24 | 22 | 5.15 |
| 3 | 28.99 | 13 | 7.71 | 23 | 4.99 |
| 4 | 22.06 | 14 | 7.26 | 24 | 4.84 |
| 5 | 17.91 | 15 | 6.87 | 25 | 4.71 |
| 6 | 15.14 | 16 | 6.53 | 26 | 4.59 |
| 7 | 13.16 | 17 | 6.23 | 27 | 4.48 |
| 8 | 11.68 | 18 | 5.96 | 28 | 4.37 |
| 9 | 10.53 | 19 | 5.73 | 29 | 4.27 |
| 10 | 9.61 | 20 | 5.51 | 30 | 4.18 |

## TABLE B
### Monthly Instalment for Each $1,000 Payable under Option B

**MALE PAYEE**

| Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | $2.90 | $2.89 | 26 | $3.20 | $3.19 | 41 | $3.77 | $3.71 | 56 | $4.92 | $4.59 | 71 | $7.27 | $5.42 |
| 12 | 2.91 | 2.91 | 27 | 3.22 | 3.21 | 42 | 3.82 | 3.76 | 57 | 5.03 | 4.66 | 72 | 7.48 | 5.45 |
| 13 | 2.93 | 2.92 | 28 | 3.25 | 3.24 | 43 | 3.88 | 3.81 | 58 | 5.15 | 4.73 | 73 | 7.68 | 5.46 |
| 14 | 2.94 | 2.94 | 29 | 3.28 | 3.27 | 44 | 3.94 | 3.86 | 59 | 5.27 | 4.80 | 74 | 7.88 | 5.48 |
| 15 | 2.96 | 2.96 | 30 | 3.31 | 3.30 | 45 | 4.00 | 3.91 | 60 | 5.40 | 4.87 | 75 | 8.08 | 5.49 |
| 16 | 2.98 | 2.97 | 31 | 3.34 | 3.33 | 46 | 4.07 | 3.97 | 61 | 5.53 | 4.94 | 76 | 8.27 | 5.50 |
| 17 | 3.00 | 2.99 | 32 | 3.38 | 3.36 | 47 | 4.14 | 4.02 | 62 | 5.68 | 5.00 | 77 | 8.46 | 5.50 |
| 18 | 3.01 | 3.01 | 33 | 3.41 | 3.39 | 48 | 4.21 | 4.08 | 63 | 5.83 | 5.07 | 78 | 8.63 | 5.51 |
| 19 | 3.03 | 3.03 | 34 | 3.45 | 3.43 | 49 | 4.28 | 4.14 | 64 | 5.98 | 5.13 | 79 | 8.79 | 5.51 |
| 20 | 3.05 | 3.05 | 35 | 3.49 | 3.46 | 50 | 4.36 | 4.20 | 65 | 6.15 | 5.18 | 80 | 8.94 | 5.51 |
| 21 | 3.08 | 3.07 | 36 | 3.53 | 3.50 | 51 | 4.44 | 4.26 | 66 | 6.32 | 5.24 | 81 | 9.07 | 5.51 |
| 22 | 3.10 | 3.09 | 37 | 3.57 | 3.54 | 52 | 4.53 | 4.32 | 67 | 6.50 | 5.28 | 82 | 9.18 | 5.51 |
| 23 | 3.12 | 3.11 | 38 | 3.62 | 3.58 | 53 | 4.62 | 4.39 | 68 | 6.68 | 5.33 | 83 | 9.28 | 5.51 |
| 24 | 3.14 | 3.14 | 39 | 3.67 | 3.62 | 54 | 4.71 | 4.46 | 69 | 6.88 | 5.36 | 84 | 9.36 | 5.51 |
| 25 | 3.17 | 3.16 | 40 | 3.72 | 3.67 | 55 | 4.81 | 4.52 | 70 | 7.07 | 5.40 | 85 | 9.42 | 5.51 |

**FEMALE PAYEE**

| Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | $2.83 | $2.83 | 26 | $3.08 | $3.07 | 41 | $3.54 | $3.52 | 56 | $4.51 | $4.35 | 71 | $6.73 | $5.36 |
| 12 | 2.84 | 2.84 | 27 | 3.10 | 3.10 | 42 | 3.59 | 3.56 | 57 | 4.61 | 4.42 | 72 | 6.94 | 5.40 |
| 13 | 2.86 | 2.85 | 28 | 3.12 | 3.12 | 43 | 3.63 | 3.60 | 58 | 4.71 | 4.50 | 73 | 7.16 | 5.43 |
| 14 | 2.87 | 2.87 | 29 | 3.15 | 3.14 | 44 | 3.68 | 3.65 | 59 | 4.82 | 4.57 | 74 | 7.38 | 5.45 |
| 15 | 2.88 | 2.88 | 30 | 3.17 | 3.17 | 45 | 3.73 | 3.69 | 60 | 4.94 | 4.65 | 75 | 7.60 | 5.47 |
| 16 | 2.90 | 2.90 | 31 | 3.20 | 3.19 | 46 | 3.78 | 3.74 | 61 | 5.06 | 4.72 | 76 | 7.82 | 5.48 |
| 17 | 2.91 | 2.91 | 32 | 3.23 | 3.22 | 47 | 3.84 | 3.79 | 62 | 5.19 | 4.80 | 77 | 8.04 | 5.49 |
| 18 | 2.93 | 2.93 | 33 | 3.26 | 3.25 | 48 | 3.90 | 3.85 | 63 | 5.33 | 4.88 | 78 | 8.25 | 5.50 |
| 19 | 2.95 | 2.94 | 34 | 3.29 | 3.28 | 49 | 3.96 | 3.90 | 64 | 5.47 | 4.95 | 79 | 8.45 | 5.51 |
| 20 | 2.96 | 2.96 | 35 | 3.32 | 3.31 | 50 | 4.03 | 3.96 | 65 | 5.63 | 5.02 | 80 | 8.64 | 5.51 |
| 21 | 2.98 | 2.98 | 36 | 3.35 | 3.34 | 51 | 4.10 | 4.02 | 66 | 5.79 | 5.09 | 81 | 8.82 | 5.51 |
| 22 | 3.00 | 2.99 | 37 | 3.39 | 3.37 | 52 | 4.17 | 4.08 | 67 | 5.96 | 5.15 | 82 | 8.97 | 5.51 |
| 23 | 3.02 | 3.01 | 38 | 3.42 | 3.41 | 53 | 4.25 | 4.14 | 68 | 6.14 | 5.21 | 83 | 9.11 | 5.51 |
| 24 | 3.04 | 3.03 | 39 | 3.46 | 3.44 | 54 | 4.33 | 4.21 | 69 | 6.33 | 5.27 | 84 | 9.23 | 5.51 |
| 25 | 3.06 | 3.05 | 40 | 3.50 | 3.48 | 55 | 4.42 | 4.28 | 70 | 6.53 | 5.32 | 85 | 9.32 | 5.51 |

Ages younger than 11 are the same as shown for age 11, and ages older than 85 are the same as shown for age 85.

Ex. A
018

## ALTERNATIVE PAID-UP LIFE INSURANCE OPTION
## RIDER

Transamerica Occidental Life Insurance Company has issued this option rider as a part of the policy to which it is attached. There is no premium payable for this rider. This option may be elected on or after the fifth policy anniversary.

Upon written request to us by the owner, this policy may be changed to alternative paid-up life insurance. The face amount will be the amount which this policy's cash value will purchase at the then current single premium rate.

The current rates for alternative paid-up life insurance are not guaranteed but they will never be greater than the guaranteed single premium rates for paid-up whole life insurance printed in this policy. The currrent single premium rates for alternative paid-up insurance will vary by the Insured's attained age at the time of election of this option, sex, whether smoker or non-smoker, and the class of risk of the Insured at the issue date of this policy, unless a reduction in rating has been effected by the Insured while this policy is in force.

The purchase of alternative paid-up life insurance is subject to the following conditions:

1. This policy and the request form signed by the owner must reach us within 60 days of the date the request is signed by the owner and prior to termination of this option. All rights under this policy will be surrendered in exchange for the alternative paid-up life policy.

2. The policy must have cash value exceeding any existing policy loan and surrender charge, if any, at the time of election of this option.

3. The owner must agree to accept a new policy loan interest rate provision. The new rate may be a variable one.

4. The owner must agree that all riders attached to the policy will terminate. The cash value, if any, of the riders attached to this policy will be added to this policy's cash value in order to determine the amount of alternative paid-up life insurance that can be purchased.

Satisfactory evidence of insurability of the Insured must be submitted to us if the difference between the amount of alternative paid-up insurance and the net single premium for the alternative paid-up life insurance is greater than the difference between the death benefit and the cash value of this policy on the date this option is elected.

If satisfactory evidence of insurability is not received by us, then the amount of the alternative paid-up insurance elected under this option will be reduced accordingly. Any remaining value after the purchase of the alternative paid-up insurance will be refunded to the owner.

**Paid-Up Alternative Insurance Policy --** The alternative paid-up policy will be issued and dated as of the date of request to exercise this option. The cash surrender value of any paid-up alternative insurance if surrendered within 30 days of a policy anniversary will not be less than the cash surrender value on such anniversary.

The alternative paid-up policy will include a table of cash values for the alternative paid-up insurance and a description of the basis upon which the policy values are calculated. The cash values will not be less than the minimum values required by the State in which this policy is delivered. A new policy loan interest rate provision will be in the alternative paid-up policy.

This option will terminate at the earliest of: (1) The exercise of any of the non-forfeiture options; (2) The death of the Insured; (3) The exercise of this option; or (4) termination of this policy.

Signed for the Company at Los Angeles, California, on the date of issue of this policy.

VICE PRESIDENT AND SECRETARY

PRESIDENT

1-006 38-185

Ex. A
019

**Request for Alternative Paid-Life Insurance:**

I wish to exercise the Option for Alternative Paid—Up Insurance for Policy No. _____.
Please send the necessary application and authorization to:

_____
Name

_____
Street

_____
City                          State                          Zip

_____
Owner's Signature

Mail to Transamerica Occidental Life Insurance Company, Box 2101 Terminal Annex, Los Angeles, California 90051, or to the agent from whom you purchased your insurance.

1-006 38-185

1150 South Olive
Los Angeles, CA 90015

9-9-85

**Application Part 1**
Individual Life Insurance

92019226-7

☐ Transamerica Occidental Life Insurance Company    ☐ Transamerica Assurance Company    (check one)

| Questions 1 through 7 relate to: | Questions 1a through 7a relate to: |
|---|---|
| ☒ Proposed Insured under individual policy | ☐ Spouse of Insured if Family Insurance is applied for |
| ☐ Proposed Insured under juvenile policy (Also complete 1a - 7a) | ☐ Applicant for a juvenile policy |
| ☐ First Proposed Insured under joint life policy | ☐ Second Proposed Insured under joint life policy |

**1. Name:** Miles Eugene
First / Middle
WOLLAM
Last / Title (Mr., Mrs., Ms., Dr.)

**Social Security Number** 9171

**1a. Name:**
First / Middle
Last / Title (Mr., Mrs., Ms., Dr.)

**Social Security Number**

**2. ce Address: Give No., Stre** Zip Code
Hillard
vnndA CA 91011

**2a. Residence Address: Give No., Street, City, and Zip Code**

| 3. Sex: ☒ Male ☐ Female | 4. Date of Birth: Month ___ Year 28 |
|---|---|
| 3a. Sex: ☐ Male ☐ Female | 4a. Date of Birth: Month ___ Day ___ Year |

| 5. Age: (Nearest Birthday) 57 | 6. Place of rth: Calif |
|---|---|
| 5a. Age: (Nearest Birthday) | 6a. Place of Birth: |

**7. Occupation (Industry & Duties):** ENGINEER ___ Yrs.
How long in this occupation?
**Name of Employer:** MONTGOMERY ENGINEERING
**Address:** 250 N MADISON ST
PASADENA CA 91

**7a. Occupation (Industry & Duties):** ___
How long in this occupation? ___Yrs.
**Name of Employer:** ___
**Address:** ___

**8. Telephone No.** Business ( 818 ) 796 9141
Residence ( 818 ) 952 7040

**9. Name and Amount of Plan Applied For (Complete 11, 12 or 15):**
Assured Life N/S $ 50,000

**10. Class of Risk Applied For:** Standard — Non Smoker

**11. Whole Life or Endowment Insurance (Including Trendsetter 20)**
a. Automatic Premium Loan: ☒ Effective ☐ Ineffective
b. Dividend Option (for Participating Plans only): N/A
☐ Cash ☐ Paid-Up Additions
☐ Premium Reduction ☐ Accumulations
☐ Other: Specify

**12. Term Insurance - Non Participating**
a. Term Period ___ Years ☐ Face Amount ☐ Level ☐ Decreasing
b. ☐ Convertible ☐ Non-Convertible
d. Move Over Option ☐ Yes ☐ No
e. Amortization Rate ___ %

**13. Additional Benefits by Rider:** NONE

| ☐ WP | ☐ Convertible ☐ Non-Convertible | ☐ FR (2 Parent) Units |
|---|---|---|
| ☐ AI $ ___ | ☐ FR (1 Parent) Units |
| Per Option | ☐ CR Units |
| ☐ GIR $ ___ | |

☐ Other (Specify Amount) ___
☐ PI (Juvenile Policy only) ☐ Death ☐ Death or Disability
☐ Monthly Income Rider (Complete APE-11)

**JOINT LIFE PLANS:** The benefits desired apply to: ☐ Both Proposed Insureds
☐ One Proposed Insured   Name: ___

**14. Children to be covered under Family or Children's Rider**
(Show additional children & details in Remarks on Page 2):

| | Name | Sex | Ins. Age | Birthdate |
|---|---|---|---|---|
| Child | | | | |
| Child | | | | |
| Child | | | | |
| Child | | | | |

a. Are there any children on whom coverage is not being requested? ☐ Yes ☐ No
b. Are there any children shown above who do not live with the applicant? ☐ Yes ☐ No
(If "Yes", give name and reason in Remarks on Page 2).

**15. Complete For Flexible Premium Plans**
Planned Periodic Premium $ 125
Per: ☐ A ☐ S ☐ Q ☒ M
Plus Initial Lump Sum + 1200
Equals Total Initial Payment = ___

**16a. Mode of Premium Payment:**
☐ Annually
☐ Semi-Annually
☒ Quarterly ) If available
☐ Monthly )

**16b. Billing Type will be Direct Collection unless otherwise noted.**
☐ Pre-authorized Check (Q&M only)
☐ Salary Deduction No. ___
☐ Mortgage Franchise No. ___
☐ Government Allotment (M only)

**17. Special Information for Premium Notices:**
a. (Complete if other than address on Question 2 is to be used.)
Name: ___
Address: ___
b. Is combined billing requested? ☐ Yes ☒ No
If "Yes", give details in REMARKS on Page 2.

MPA 6-1 85

Ex. A
021

Page 1

PART 1 OF APPLICATION – CONTINUED                    92019226-7

**18.** **OWNER:** Complete if Proposed Insured is an adult. If Proposed Insured is under age 16, complete instead Questions 25 - 27.

The owner will be
[X] Proposed Insured    [ ] The Joint Insureds    [ ] Other (Complete below)
If "Other" the owner is:
[ ] Individual    } S.S. or Tax No. _____
[ ] Corporation
[ ] Partnership   } Employer
[ ] Trustee       } Identification No. _____

Full Name: _____

Address: _____

Complete questions 20 through 24 with respect to all persons to be covered.

**19.** **Beneficiary:** Print full name and relationship to Proposed Insured. If more than one, then equally to the survivors unless otherwise indicated.

PRIMARY - MARY. HeLen Mossoni Wollam
wife

Contingent
in These    MiLes Eugene WoLLam - son
equal  }    Cynthia Irene WoLLam - Daughter
parts       Kathleen Mary WoLLam - Daughter

If the policy or rider provides monthly income payments, the beneficiary has the right, unless withdrawn, to receive the commuted value of such payments in one sum. Indicate if the right is to be withdrawn: _____

| | | Yes | No |
|---|---|---|---|
| **20.** | **Foreign Travel, Aviation and Military:** | | |
| | a. Except for vacation trips, does any person to be covered intend to travel outside the U.S. or Canada within the next two years? . . . . . . . . . . . . . . . . . . . . . . | ☐ | X |
| | If "Yes", give details in Remarks. | | |
| | b. Does any person to be covered intend to fly other than as a passenger or has he or she flown other than as a passenger during the past two years? . . . . . . . . . . . . . . . . | ☐ | X |
| | If "Yes", complete Aviation Questionnaire. | | |
| | c. Is any person to be covered a member, or does he or she intend to become a member, of the armed forces including reserves? . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ | X |
| | If "Yes" give details in Remarks. | | |

| | | Yes | No |
|---|---|---|---|
| **21.** | **Avocation and Sports:** | | |
| | Does any person to be covered participate in recreational activities involving: | | |
| | a. Aeronautics (including hang-gliding, ultra light, soaring, sky diving, ballooning)? . . . . . . . . . . . . . . . . . . . | ☐ | X |
| | b. Powered racing or competitive vehicles (including motorcycles, automobiles and motor boats)? . . . . . . . . . . | ☐ | X |
| | c. Recreational vehicles over open terrain, trails, sand, snow or ice (including snowmobiles, dirt bikes and dune buggies)? | ☐ | X |
| | d. Any of the following — skin or scuba diving, mountain climbing, rodeos, competitive skiing? . . . . . . . . . . | ☐ | X |
| | If "Yes", to any of the above, complete an Avocation and Sports Questionnaire. | | |

| | | Yes | No |
|---|---|---|---|
| **22.** | **Other Insurance:** | | |
| | a. Has any company declined to issue, reinstate or renew, rated, modified, postponed or cancelled, any life or health insurance on any person to be covered? . . . . . . . . | ☐ | X |
| | b. Will insurance, including annuities, in any company be discontinued or changed if the insurance applied for is issued? . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ | X |
| | c. Is any application for life or health insurance on any person to be covered pending in any other company? Explain any "Yes" in Remarks. Give name of company and person affected. | ☐ | X |
| | d. Life Insurance now in force (Personal) . . $ 160,000 | | |
| | (All companies) (Business) . . $ 160,000 | | |
| | e. Accidental Death insurance now in force . $ 160,000 | | |
| | f. Disability Income insurance (Group and Individual coverage) now in force. . . . . . $ 0 | | |

| | | Yes | No |
|---|---|---|---|
| **23.** | **Smoking Habits:** | | |
| | a. Has any person to be covered smoked tobacco cigarettes in the past year?. . . . . . . . . . . . . . . . . . . . . . . | ☐ | X |
| | If "Yes", indicate in Remarks the person and number of cigarettes per day. | | |
| | b. Is tobacco other than cigarettes used by any person to be covered? . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ | X |
| | If "Yes", give details in Remarks including frequency of use. | | |

| | | | Yes | No |
|---|---|---|---|---|
| **24.** | **Driving Record:** | | | |
| | a. What is your Driver's License No. _____ State CA | | | |
| | Within the past 3 years, has any person to be covered been convicted of or pleaded guilty to: | | Yes | No |
| | b. Three or more moving violations and/or accidents?. . . | | ☐ | X |
| | c. Driving under the influence of alcohol and/or drugs?. . . | | ☐ | X |
| | If "Yes", give name of person(s) affected and explain in Remarks. | | | |

Complete questions 25 through 27 with respect to juvenile policies only.

**25.** **Owner of Policy on a Juvenile:**
The applicant identified in Questions 1a through 7a on page 1 will be the owner unless a different owner is specifically shown in Remarks.

Relationship to Proposed Insured (child) _____
If other than parent or grandparent, either a parent or guardian must sign this application in addition to the Applicant.

**26.** Give full name of parents:
Father _____
Mother _____

**27.** State the total amount of life insurance on each brother and sister of the child.
Name _____ Amount _____
Name _____ Amount _____
If more space is required, answer in Remarks.

**Remarks:**

**Home Office Changes in the Application:**

MPA 6-165

It is represented that the statements and answers given in this application are true, complete, and correctly reco 92019226-7
(our) knowledge and belief. It is agreed that: (1) This application shall consist of Part I and Part II and shall be tl — any policy
issued on this application; (2) Except as otherwise provided in the conditional receipt, if issued, with the same number as Part I of this
application, any policy issued on this application shall not take effect unless all of the following conditions are met: (a) The full first
premium is paid, (b) The policy is delivered to the owner during the lifetime of the person(s) to be covered by such policy, and (c) All
of the statements and answers given in this application to the best of my (our) knowledge and belief continue to be true and complete
as of the date of delivery of the policy; (3) No waiver or modification shall be binding upon the Company unless in writing and signed
by the President or a Vice President and the Secretary or an Assistant Secretary; (4) The Company may indicate changes in the space
for Home Office Changes in the Application for administrative purposes only. Any other changes in this application shall be subject to
written consent by the owner.

Amount paid with this Application: $ *125.00*

Signed at *PASADENA CA* on *8/9* , 19 *85*

Witness to all signatures (Licensed Resident Agent, as required)

X *Miles E. Wollam*
Signature of adult to be insured

*MiLES E WOLLAM*
Printed name of above

Countersigned
(if your state requires) _____ (Licensed Resident Agent)

X _____
Signature of other adult to be insured, if any

Owner, if other than Proposed Insured, must sign above.

Printed name of above

If owner is a corporation, an authorized officer other than the Proposed Insured must sign on the "Owner" line. Give title and full name of the corporation on the next line.

## AUTHORIZATION TO OBTAIN INFORMATION

☐ TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY
☒ TRANSAMERICA ASSURANCE COMPANY
("the Company")

I/we authorize any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insuring or reinsuring company, the Medical Information Bureau, Inc., consumer reporting agency, or employer having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment of me (us) or my (our) minor children and any other non-medical information of me (us) or my (our) minor children to give the Company or its legal representative, any and all such information.

I (we) understand the information obtained by use of the Authorization will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by the Company to any person or organization except to reinsuring companies, the Medical Information Bureau, Inc., or other persons or organizations performing business or legal services in connection with my (our) application, claim, or as may be otherwise lawfully required or as I (we) may authorize.

I (we) know that I (we) may request to receive a copy of this Authorization.

I (we) agree that a photographic copy of this Authorization shall be as valid as the original.

I (we) agree this Authorization shall be valid for two and one half years from the date shown below.

I (we) understand that if an investigative consumer report is ordered in connection with this application, I (we) may elect to be interviewed in connection with the preparation of the report and, upon request, I (we) will be provided with a copy of the report. I (we) elect to be interviewed if an investigative consumer report is prepared: ☐ Yes ☒ No

I (we) acknowledge receipt of the Notice of Disclosure of Information.

Signed this *9* day of *August* 19 *85*

X *Miles E. Wollam*
Signature of Proposed Insured
(or parent or guardian if proposed insured is a minor)

Name of Minor Child _____

Name of Minor Child _____

Name of Minor Child _____

X _____
Signature of Spouse, if to be covered

MPA 6-185

Ex. A
023

NO 073165

Transamerica Occidental Life Insurance Company
☐ Transamerica Assurance Company

CHECK ONE

Transamerica Center
1150 South Olive
Los Angeles, CA 90015

**Application Part 2**
Paramedical Health History

9 2019 226-7

1. PROPOSED INSURED: Print Full Name
*Miles Wollam*

2. DATE OF BIR
Month ____ Day ____ Year *28*

3. FAMILY RECORD: Show age and present health, or if deceased, show age at death and cause of death.

| | Age | Present Health | Cause of Death | Brothers & Sisters | Ages | Present Health or Cause of Death |
|---|---|---|---|---|---|---|
| Father | 56 | | *Coronary* | No. living 2 | 8-44 | *Good* |
| Mother | 82 | *Good* | | No. deceased | 13-64 | *Good* |

4. Name and address of your family physician: *Lyman Conner M.D.  Glen CA*
*Verdugo Hospital  Glendale CA*

5. What medications are you presently taking?
*Potassamide 5 mg.*

Give details of all "Yes" answers, including all dates, diagnoses, durations, outcome and the names and addresses of all attending physicians, clinics and hospitals.

6. WITHIN THE PAST FIVE YEARS HAVE YOU:

| | Yes | No |
|---|---|---|
| a. Consulted, been examined or been treated by any physician or practitioner? | ☑ | ☐ |
| b. Had an X-ray, electrocardiogram or any laboratory test or study? | ☑ | ☐ |
| c. Had observation or treatment at a clinic, hospital or sanitarium? | ☑ | ☐ |
| d. Had or been advised to have a surgical operation? | ☐ | ☑ |
| e. Had dizziness, shortness of breath, pain or pressure in the chest? | ☐ | ☑ |
| f. Had any injury requiring treatment? | ☐ | ☑ |

7. TO THE BEST OF YOUR KNOWLEDGE, HAVE YOU EVER HAD OR BEEN TOLD YOU HAD:

| | Yes | No |
|---|---|---|
| a. Epilepsy, fainting spells, nervous or mental condition, neuritis, paralysis, or any disease or abnormality of the brain or nervous system? | ☐ | ☑ |
| b. Heart attack, murmur, palpitation, or high blood pressure, anemia, varicose veins, or any disease or abnormality of the heart, blood or blood vessels? | ☐ | ☑ |
| c. Tuberculosis, asthma, pleurisy, or any disease or abnormality of the lungs, bronchial tubes, throat or respiratory system? | ☐ | ☑ |
| d. Ulcer, indigestion, colitis, gallstone, hernia or any disease or abnormality of the stomach, intestines, rectum, gall bladder or liver? | ☐ | ☑ |
| e. Urinary sugar, albumin or stone, syphilis, menstrual disorder, or disease or abnormality of the breasts, kidneys, prostate, urinary or genital systems? | ☐ | ☑ |
| f. Diabetes, gout, or any disease or abnormality of the thyroid or other glands? | ☐ | ☑ |
| g. Arthritis, rheumatic fever, back trouble, or any disease or abnormality of the joints, muscles or bones? | ☐ | ☑ |
| h. Any disease or abnormality of the eyes, ears or skin? | ☐ | ☑ |
| i. Cancer or tumor? | ☐ | ☑ |
| j. Any physical deformity or defect? | ☐ | ☑ |

8. WITHIN THE PAST TEN YEARS, HAVE YOU USED:

| | Yes | No |
|---|---|---|
| a. Amphetamines, barbiturates or sedatives except as prescribed by a physician? | ☐ | ☑ |
| b. Cocaine, heroin, morphine, LSD, marijuana, PCP, or any other hallucinogenic or narcotic drug? | ☐ | ☑ |

9. a. Have any of your close relatives ever had cancer, diabetes, or a nervous or mental abnormality?

| | Yes | No |
|---|---|---|
| a. Have any of your close relatives ever had cancer, diabetes, or a nervous or mental abnormality? | ☐ | ☑ |
| b. Has your weight changed more than 15 pounds in the past year? | ☐ | ☑ |
| c. Have you ever received treatment or joined an organization for alcoholism or drug addiction? | ☐ | ☑ |
| d. Has any application for insurance on your life ever been declined, withdrawn, postponed, rated or modified in any way? | ☐ | ☑ |
| e. Are you now pregnant? | ☐ | ☐ |

*#5 - allergy
Problem -
mild - uses
Medication
once in awhile*

*6A - Dr.
6B / Conner
M.D
for allergy
Problem -
X rays, ekg
etc taken.*

*6 C - Observation
on allergy
Problem.
Nothing was
Found only
a Hernia.*

The statements and answers given above are true, complete and correctly recorded, to the best of my knowledge and belief. To the extent allowed by law, I waive my rights to prevent disclosure of any knowledge or information about the above questions. This waiver applies to any physician, hospital official or employee, or other person who has attended or examined me, or who has been consulted by me. I authorize such person to make such disclosures. Such person may also testify to their knowledge. This authorization is made on behalf of myself and any person who shall have or claim any interest in any contract of insurance issued on this application.

Ex. A
024

Signed at *La Canada, Cal* on *8-15-* 19 *85*

Witness _____
Signature of Witness

Signature of Proposed Insured *Miles E. Wollam*

MPM 2-184

Transamerica Occidenta. e
Insurance Company

☐ Transamerica Assurance Company

CHECK ONE

Transamerica Center
1150 South Olive
Los Angeles, CA 90015

**Application Part 2**
Paramedical Health History

92019226-7

**1. PROPOSED INSURED: Print Full Name** Miles Wollam

**2. DATE OF BIRTH:** Month _____ Day _____ Year 28

**3. FAMILY RECORD:** Show age and present health, or if deceased, show age at death and cause of death.

| | Age | Present Health | Cause of Death | Brothers & Sisters | Ages | Present Health or Cause of Death |
|---|---|---|---|---|---|---|
| Father | 56 | Good | Coronary | No. living 2 | 5-44 | Good |
| Mother | 82 | Good | | No. deceased | 13-64 | Good |

**4. Name and address of your family physician:** Lyman Conner M.D. ... CTR

**5. What medications are you presently taking?** Post Menorika 8 mg

**6. WITHIN THE PAST FIVE YEARS HAVE YOU:**  Yes No
a. Consulted, been examined or been treated by any physician or practitioner? ☑ ☐
b. Had an X-ray, electrocardiogram or any laboratory test or study? ☑ ☐
c. Had observation or treatment at a clinic, hospital or sanitarium? ☑ ☐
d. Had or been advised to have a surgical operation? ☐ ☑
e. Had dizziness, shortness of breath, pain or pressure in the chest? ☐ ☑
f. Had any injury requiring treatment? ☐ ☑

Give details of all "Yes" ans. wers, including all dates, diagnoses, durations, outcome and the names and addresses of all attending physicians, clinics and hospitals.

#5 - allergy problem - mild - uses medication once in Auhi

6A ~ DR. 6B / Conner m: for allergy problem - Xrays, ekg etc taken.

6C - observation on allergy problem. Nothing was found only a Hernia.

**7. TO THE BEST OF YOUR KNOWLEDGE, HAVE YOU EVER HAD OR BEEN TOLD YOU HAD:**  Yes No
a. Epilepsy, fainting spells, nervous or mental condition, neuritis, paralysis, or any disease or abnormality of the brain or nervous system? ☐ ☑
b. Heart attack, murmur, palpitation, or high blood pressure, anemia, varicose veins, or any disease or abnormality of the heart, blood or blood vessels? ☐ ☑
c. Tuberculosis, asthma, pleurisy, or any disease or abnormality of the lungs, bronchial tubes, throat or respiratory system? ☐ ☑
d. Ulcer, indigestion, colitis, gallstone, hernia or any disease or abnormality of the stomach, intestines. rectum, gall bladder or liver? ☐ ☑
e. Urinary sugar, albumin or stone, syphilis, menstrual disorder, or disease or abnormality of the breasts, kidneys, prostate, urinary or genital systems? ☐ ☑
f. Diabetes, gout, or any disease or abnormality of the thyroid or other glands? ☐ ☑
g. Arthritis, rheumatic fever, back trouble, or any disease or abnormality of the joints, muscles or bones? ☐ ☑
h. Any disease or abnormality of the eyes, ears or skin? ☐ ☑
i. Cancer or tumor? ☐ ☑
j. Any physical deformity or defect? ☐ ☑

**8. WITHIN THE PAST TEN YEARS, HAVE YOU USED:**  Yes No
a. Amphetamines, barbiturates or sedatives except as prescribed by a physician? ☐ ☑
b. Cocaine, heroin, morphine, LSD, marijuana, PCP, or any other hallucinogenic or narcotic drug? ☐ ☑

**9. a.** Have any of your close relatives ever had cancer, diabetes, or a nervous or mental abnormality? ☐ ☑
b. Has your weight changed more than 15 pounds in the past year?.... ☐ ☑
c. Have you ever received treatment or joined an organization for alcoholism or drug addiction? ☐ ☑
d. Has any application for insurance on your life ever been declined, withdrawn, postponed, rated or modified in any way? ☐ ☑
e. Are you now pregnant? ☐ ☐

The statements and answers given above are true, complete and correctly recorded, to the best of my knowledge and belief. To the extent allowed by law, I waive my rights to prevent disclosure of any knowledge or information about the above questions. This waiver applies to any physician, hospital official or employee, or other person who has attended or examined me, or who has been consulted by me. I authorize such person to make such disclosures. Such person may also testify to their knowledge. This authorization is made on behalf of myself and any person who shall have or claim any interest in any contract of insurance issued on this application.

Signed at _____ on 8-15- 19 85

Witness _____ Signature of Witness    Signature of Proposed Insured

MPM 2-184

Ex. A

025

Transamerica Occidental
Life Insurance Company,
Home Office: Los Angeles, CA

Policy Form          AL
Individual Life Insurance

Adjustable Life Insurance
Flexible Premiums Payable During
Life of Insured to Age 100

Death Benefit Payable at Death of
Insured Prior to Age 100
Net Cash Value Payable at
Insured's Age 100

Non-Participating - No Annual Dividends

1-131  11-185

Ex. A
026